John W. **CLIFFORD**, Appellant,

v.

**MARION COUNTY PROSECUTING ATTORNEY, Appellees.**

No. 49A02–9501–CV–4.

Court of Appeals of Indiana.

Aug. 10, 1995.

Wilburn G. Lowry, Indianapolis, for appellant.

Sue A. Beesley, Frederick A. Roetter, Office of Corp. Counsel, Indianapolis, for appellee.

## OPINION

FRIEDLANDER, Judge.

John W. Clifford was divorced from Carolyn Clifford and ordered to pay support for two children of the marriage. There ensued a series of court proceedings between John

and the office of the Marion County Prosecuting Attorney (the Prosecutor's Office), which initially was charged with collecting the support payments from John and disbursing them to Carolyn and the children. Eventually, John filed a civil complaint seeking monetary damages, claiming that the Prosecutor's Office had engaged in harassment. John appeals the grant of the Prosecutor's Office's Motion to Dismiss, presenting the following issues for review:

I. Was the Prosecutor's Office immune from liability pursuant to the Indiana Tort Claims Act[1] (the Act)?

II. Was the Prosecutor's Office acting within the scope of its authority when it failed to heed an order of the Marion Superior Court?

III. Did the Prosecutor's Office act as an agent of Title IV–D Court in pursuing child support matters concerning John, thereby rendering inapplicable immunity conferred under the Act?

IV. Did the trial court err in allowing the Prosecutor's Office to introduce material outside the pleadings in support of its motion to dismiss?

We affirm.

The facts most favorable to John, the non-moving party, are that John and Carolyn were divorced on May 28, 1987. John was ordered to pay support to Carolyn for the two children of the marriage, Carla and Carrie. In May, 1989, John fell behind in his child support payments and Carolyn filed a petition for contempt. A May 23, 1989 hearing was held on the petition, at which Carla was represented by the Prosecutor's Office. On June 20, 1989, the court entered an order requiring, in part, that John continue paying to Carolyn $60.00 per week in child support for Carla until November 30, 1989. On that date, John would begin sending $60.00 per week directly to Carla as his contribution to Carla's college expenses. The payments to Carla were to continue until May 1, 1991 or until Carla was no longer enrolled in college,

whichever came first. In addition, the June 20 order called for John to satisfy the arrearage with weekly payments of $80.00 over a four-month period beginning in September, 1989. The court also found that John had not been in wilful contempt of the support order.

On June 28, 1989, the Prosecutor's Office initiated an Income Withholding Order pursuant to Ind.Code 31–2–10–1, in violation of the June 20, 1989 court order.[2] After a hearing in July or August of 1989, the hearing commissioner stated to the representative from the Prosecutor's Office that the June 20 order was to be observed and that the Prosecutor's Office "was held responsible to make sure that when Carla turned 21 on November 30, 1989, [John] would be allowed to pay her college expenses directly to her." *Record* at 32. On November 21, 1989, the Prosecutor's Office created a new account for Carla and ordered wages be withheld from John's pay in the amount of $70.00, to be paid into the account and disbursed to Carla. On January 17, 1989, the Prosecutor's Office filed a Petition to Modify seeking an increase in the amount of John's child support obligation.

John challenged the withholding orders and, on February 20, 1990, the parties agreed that the withholding order would terminate with respect to the amount owed to Carla, and that payments would be made directly to her. The court also dismissed the January 17, 1989 Petition to Modify on the ground that the requisite one-year period had not elapsed since the last request for an increase. This agreement was reached after the deputy prosecutor conceded that the Prosecutor's Office was wrong in issuing the withholding order. On March 6, 1990, John's employer received notice to terminate the withholding order and the order was terminated on March 24, 1990. Subsequent accounting erroneously determined that John was in arrears in payments to Carolyn and Carla and on May 30, 1990, the income with-

---

1. Ind.Code 34–4–16.5 *et seq.*

2. The record does not contain the June 20 order, therefore we do not know the basis for John's claim that the income withholding order violated the June 20 order. Nevertheless, for purposes of this appeal, we accept as true John's claim that the income withholding order violated the June 20 order.

holding order was reinstated.[3] John spoke with a representative of the Prosecutor's Office, who informed John that the Prosecutor "did not believe that Mr. Clifford would pay Carla directly any way [sic] so they were initiating a new account and that if he did not agree with it he could just go to Court." *Record* at 33.

On September 1, 1990, the Prosecutor's Office filed another Petition to Modify, seeking to increase the amount of John's child support obligation. Following a September 11, 1990 hearing, the May 30 withholding order was terminated. On October 23, 1990, John paid in full the entire amount to which Carla would be entitled as of May 1, 1991 and her child support account was closed. The Prosecutor's Office informed John that he had satisfied all arrearages and that the Prosecutor's Office would notify the credit bureau and the IRS, which was then withholding a $1,570.91 tax-refund check from John. Notification apparently was not made, because John's refund check was subsequently sent to the Prosecutor's Office. John filed his complaint for damages against the Prosecutor's Office on July 27, 1992 alleging that the Prosecutor's Office had committed "deliberate, malicious, arbitrary, and capricious" acts against John in the manner in which it pursued collection of child support.

## I.

■ John's action was dismissed pursuant to Rule 12(B)(6) of the Indiana Rules of Trial Procedure for failure to state a claim upon which relief can be granted. This ruling presumably was premised upon a determination that, as argued in the Prosecutor's Office's Motion to Dismiss, the Prosecutor's Office was immune from liability pursuant to the Act. The threshold question in the instant case is one of immunity under IC 34–4–16.5–3(5).

IC 34–4–16.5–3(5) states:

"A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

\*        \*        \*        \*        \*        \*

(5) the initiation of a judicial or an administrative proceeding".

Subsection (5) provides that a governmental entity or employee is not liable for losses resulting from the initiation of judicial or administrative proceedings. A "judicial proceeding" in the context of governmental immunity has been defined as a proceeding "for the purpose of obtaining such remedy as the law allows." *Board of Comm'rs of Hendricks County v. King* (1985), Ind.App., 481 N.E.2d 1327, 1330 (quoting *Treloar v. Harris* (1917), 66 Ind.App. 59, 117 N.E. 975, 978). A majority of decisions focusing upon Subsection (5) have considered the question of immunity as it pertains to complaints alleging malicious prosecution. Although John's is not such a complaint, it alleges conduct on the part of the Prosecutor's Office which is sufficiently analogous to render previous malicious prosecution decisions helpful.

After our supreme court abolished governmental immunity in *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733, the legislature responded by enacting the Indiana Tort Claims Act in order to establish procedures for cases involving prosecution of tort claims against governmental entities. Soon after enactment of the Act, this court determined that Subsection (5) confers immunity upon State and municipal subdivisions and police officers in actions for malicious prosecutions. *See Livingston v. Consolidated City of Indianapolis* (1979), Ind.App., 398 N.E.2d 1302. The court cited the important public policy underlying its conclusion:

"When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best

---

**3.** The record is devoid of evidence tending to prove or disprove that the arrearage determination was, in fact, erroneous. The Prosecutor notes simply that the accounting was performed and resulted in a determination of arrearage. John, however, claims:

"Contrary to the allegations of the Defendant, Mr. Clifford was not delinquent in his pay-

ments and the arrearage was caused by the setting up of two (2) separate accounts, one for Carla and one for the other daughter, and the applying of funds to the wrong account by the Clerk's Office." *Record* at 33.

Again, for purposes of this appeal, we accept as true John's assertion that the accounting was erroneous.

interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative level would wreak untold harm. 'Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it into execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution.' [Citation omitted.] ... 'The public welfare requires that this choice (whether or not to institute proceedings) shall be free of all fear of personal liability. To assure this freedom of action it is deemed best to make that assurance positive and definite by securing him against even actions based upon a malicious abuse of his official power.' [Citation omitted.]" *Livingston, supra,* at 1306 (quoting *White v. Towers* (1951), 37 Cal.2d 727, 235 P.2d 209, 211).

■ The rationale underlying the conferral of immunity upon police officers against malicious prosecution claims was employed in extending immunity to prosecuting attorneys: "[W]here ... the acts are reasonably within the general scope of authority granted to prosecuting attorneys, no liability will attach." *Foster v. Pearcy* (1979), 270 Ind. 533, 387 N.E.2d 446, 449, *cert. denied,* 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235. The principle of prosecutorial immunity from actions for monetary damages when acting within the scope of the authority granted to prosecuting attorneys was recently reaffirmed. *See Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320.

The instant case does not involve a criminal prosecution. However, the reasons for granting immunity to prosecutors in pursuing collection of child support payments are no less compelling than those cited in support of immunity for prosecuting criminal actions and need not be set out in detail. It

is sufficient to note that vigorous enforcement of child support obligations increases the probability both that children's physical and educational needs will be met and that such occurs with minimal additional burden on the taxpayers. We conclude that the principle of prosecutorial immunity heretofore recognized in Indiana includes immunity for actions undertaken pursuant to the authority to enforce child support orders.

## II.

John contends that the Prosecutor's Office was acting outside the scope of its authority by allegedly ignoring court orders and therefore its actions were not immune.

John states that the Prosecutor's Office did not have the power to ignore court orders in seeking income withholding orders. While this is certainly true,[4] it does not lead inevitably to the conclusion that such actions are outside the scope of immunity set out in the Act. Such an interpretation would render meaningless the immunity conferred under the Tort Claims Act.

■ An act which subjects a governmental entity to tort liability if immunity does not attach is rarely "authorized", as John uses the term here. For example, a prosecutor has authority to file criminal charges against a person, but such does not include the authority to institute criminal proceedings in bad faith. Were the law as John contends, the prosecutor would not be immune from liability in such cases because, although he did possess the authority to file criminal charges, he did not possess the "authority" to do so motivated solely by bad faith. Yet, our courts have long held that prosecutors are immune from liability for such claims. *Livingston, supra; Griffith v. Slinkard* (1896), 146 Ind. 117, 44 N.E. 1001. In view of the fact that the primary tort which arises from initiating legal proceedings necessarily includes the element of bad faith, the presence of bad faith cannot remove the conduct from the very protection envisioned by the Act. *Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253.

---

4. We assume, for the sake of this discussion, that there is merit in the contention that the Prosecutor did, in fact, ignore court orders. We express no opinion as to the accuracy of that contention.

■ "Authority" in this context cannot be defined simply as the power to do an act so long as the activity is correctly or properly done. The allegedly tortious act may be wrongful because it was negligently done, done at an inappropriate time, or done for the wrong reason. Therefore, the proper focus when considering whether a prosecutor was acting "within its authority" for purposes of tort claims immunity is not upon the propriety or impropriety of the act in a particular context, but rather upon the nature of the activity itself. If it is an activity in which a prosecutor may engage, i.e., within the prosecutor's general scope of authority, the activity is "authorized" within the meaning of the Tort Claims Act, regardless of whether it was done negligently or done with improper motives.

■ A prosecutor has authority to enforce child support orders. IC 31–2–10–1 *et seq.* Such includes the authority to seek income withholding orders. IC 31–2–10–7(b). Therefore, the Prosecutor's Office was acting within its authority, in the context of the Act and within the meaning of *Foster, supra,*[5] when it sought income withholding orders to enforce the child support order against John.

### III.

John argues that the Prosecutor's Office was acting as an agent of Title IV Court, and not the State of Indiana, in pursuing child support matters against John and therefore was not entitled to immunity under the Act.

■ The "Title IV Court" to which John refers presumably is a court in which adjudication of the child support provisions of Title IV–D of the federal Social Security Act, 42 U.S.C.A. § 651 *et seq.*, occurs. We acknowledge that the Title IV program and funds originate from a source outside the State of Indiana, i.e., the federal government. This is not to say that State of Indiana employees who administer the program at the state level become employees of the federal government and cease working for the State of Indiana while attending to Title IV matters. The Title IV program is simply a federal

program of which certain portions are implemented at the state level by the states themselves. It is part of the job duties of certain State of Indiana employees to perform tasks associated with the Title IV program. When doing so, State of Indiana employees retain the status of state employee.

Therefore, employees of the Prosecutor's Office were acting as employees of the State of Indiana when pursuing enforcement of the support order against John pursuant to the provisions of Title IV and were entitled to such immunity as was applicable to prosecutors under the Act. *Cf. Foster, supra* (because a prosecutor has a duty to inform the public as to his various duties, the prosecutor must be afforded absolute immunity in carrying out those duties; immunity is not limited to situations in which the prosecutor is acting as the State's advocate in a court of law).

### IV.

John contends that the court erred in allowing the Prosecutor's Office to introduce material outside the pleadings in support of its motion to dismiss.

■ The trial court granted the motion to dismiss pursuant to T.R. 12(B)(6) for failure to state a claim upon which relief can be granted. When considering a T.R. 12(B)(6) motion to dismiss, the trial court accepts as true the facts alleged in the complaint. *Hudgins v. McAtee* (1992), Ind.App., 596 N.E.2d 286. Granting such a motion is inappropriate unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts. *Gray v. Westinghouse Elec. Corp.* (1993), Ind.App., 624 N.E.2d 49, *trans. denied.* When reviewing the dismissal of a complaint for failure to state a claim, we examine the pleadings in a light most favorable to the nonmoving party and will not affirm unless it appears that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances. *Couch v. Hamilton County Bd. of Zoning Appeals* (1993), Ind.App., 609 N.E.2d 39.

5. "We express no opinion as to the liability of prosecuting attorneys or their deputies for acts outside the scope of their authority." 387 N.E.2d at 449.

John described the allegedly improper material introduced by the Prosecutor's Office in support of the motion as follows:

"The Defendant/Prosecutor alleges that Clifford failed to support his daughters as required by the court and that the Marion County Prosecutor's Office operated swiftly and effectively in strict accordance with the authority granted to it by law to protect the interest of the daughter, Carla Clifford, and should therefore be allowed the full protection of the statute." Brief of Appellant at 23.

We note that a significant portion of John's argument upon this issue is comprised of refutation of the factual allegations set forth in the passage quoted above. Of course, we may not consider such material, whether offered by John or the Prosecutor's Office, if it was extraneous to the pleadings, but must focus only on the materials appropriately before the court when considering a T.R. 12(B)(6) motion.

John's complaint alleged that the Prosecutor's Office violated a court order by initiating income withholding orders when John was not in arrears. The complaint further alleged that the Prosecutor's Office's actions were deliberate, malicious, and arbitrary. Even accepting these allegations as true, as we must for purposes of a T.R. 12(B)(6) motion, John still has no legally cognizable claim against the Prosecutor's Office. We have held in Issues I and II, *supra*, that the Prosecutor's Office is immune from liability under the Tort Claims Act for actions which it is authorized to perform in enforcing child support obligations, even if the particular actions complained of were motivated by malice. As stated previously, the Prosecutor's Office is authorized to institute income withholding orders in enforcing child support orders.

There is no indication that the court considered the allegedly improper material in making its determination. Even if it did, we must sustain the dismissal of a complaint for failure to state a claim if it can be done on any legal basis. *Runde v. Vigus Realty, Inc.* (1993), Ind.App., 617 N.E.2d 572. Considering only the complaint and the answer, in view of our discussions in Issues I, II, and III, *supra*, we conclude that the dismissal was proper and that even if the court erroneously considered material outside the pleadings, the error was harmless.

Judgment affirmed.

KIRSCH and STATON, JJ. concur.