INDIANA DEPARTMENT OF
FINANCIAL INSTITUTIONS,
et al., Appellants–Defendants,

v.

WORTHINGTON BANCSHARES, INC.,
et al., Appellees–Plaintiffs.

No. 30A05–9906–CV–288.

Court of Appeals of Indiana.

May 23, 2000.

**900**

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellants.

## OPINION

VAIDIK, Judge

The Indiana Department of Financial Institutions (DFI) appeals the trial court's denial of summary judgment. In this interlocutory appeal, DFI contends that it is immune from tort liability for its actions in taking possession of Worthington Bank. Because we conclude that DFI is immune for actions resulting from the initiation of judicial proceedings and arising from the performance of a discretionary function, we reverse.

### Facts and Procedural History

Worthington Bancshares, Inc. acquired Worthington State Bank in 1988. In December 1990, the Federal Deposit Insurance Corporation (FDIC) examined the bank and found a "dramatic deterioration in the overall condition [of the bank] over the past two years." Record at 243, Exh. D, p. 3. The FDIC examination showed that the ratio of capital to assets had fallen below the regulatory limit in violation of FDIC rules. *Id.* The FDIC audit also showed that "the volume of adversely classified assets ha[d] increased dramatically." *Id.*

The FDIC concluded that "[n]early 30% of total loans and leases [were] adversely classified" and "[a]dversely classified assets ... represent[ed] 175% of total equity capital." *Id.* The audit detailed several irregular loans, and overdue loans constituted 14% of the loan portfolio. *Id.* at p. 8. The FDIC audit also concluded that the bank was inadequately staffed to address the problems and that the deterioration of the bank was a poor reflection on the board of directors, which consisted of only three members in violation of state law. *Id.* at p. 3. The FDIC found numerous violations of state and federal regulations and concluded that due to the bank's overall deteriorating condition, a cease and desist order was recommended. *Id.* at p. 4. The FDIC classified the bank as "troubled," thereby subjecting Worthington to additional federal oversight. *Id.* It placed the bank in classification 5, which is reserved for "institutions with an extremely high immediate or near term probability of failure." *Id.* at p. 14.

On July 5, 1991, the bank's directors signed the cease and desist order along with representatives of FDIC and DFI. Record at 244, Exh. E. In the order, the bank specifically waived the right to judicial review under the FDIC. *Id.* The cease and desist order required the bank to take several actions to improve its financial condition. Such requirements included, *inter alia:* 1) appointment of independent directors to the board; 2) majority composition of independent directors on the bank's loan and investment committees; 3) hiring of qualified personnel; 4) establishment of reasonable executive compensation; 5) increase of total capital by one million dollars within ninety days; 6) establishment of specified capital ratios; 7) establishment of an operating budget; 8) charge-off of bad loans; and 9) prohibition against lending to persons whose loans were classified as substandard. Record at 244, Exh. E.

On August 9, 1991, DFI audited the bank. The audit found that losses "virtu-

ally deplete[d the] bank's entire capital position." Record at 242, Exh. C, p. 4. DFI's audit found that capital was .36% of adjusted total assets. *Id.* It detailed loan losses and concluded the bank had failed to meet the capital ratio required by the FDIC cease and desist order. DFI concluded that "the bank [was] insolvent and operating in an unsafe and unsound manner." *Id.* The audit also found that the board "ha[d] taken actions since the previous State examination that directly contradict[ed] State and Federal statutes, regulations, and policy." *Id.* at p. 5. The audit revealed that the board was not legally constituted. DFI also assigned a rating of five (5) to the bank and noted: "Institutions assigned this rating are considered to exhibit an excessive volume of financial and asset weaknesses which are not correctable or resolvable in the normal course of business. . . . The condition of such banks are such as to require immediate corrective and supervisory attention. The probability of failure is considered high." *Id.* at p. 8.

On August 15, 1991, DFI issued its own cease and desist order to the bank. Record at 246, Exh. G. The DFI order required the bank to stop paying excessive fees to Mark D. Van Eaton and another director, John Snyder, because such payments were inadequately documented. It further required the bank to reduce Van Eaton's salary and to suspend payment of legal fees to John Price, the bank's attorney, until adequate documentation was provided. It also required the bank to obtain reimbursement of certain bonuses and fees paid to directors and officers that violated state or federal law.

On November 14, 1991, the seven members of DFI reviewed the examination of Worthington State Bank. DFI unanimously approved a motion stating that Worthington State Bank was insolvent and in an unsafe and unsound condition; that DFI should take possession of the bank; and that DFI petition the Greene Circuit Court to appoint FDIC as the receiver of the bank. Record at 240, Exh. A. That same day, the trial court found "that the appointment of the Federal Deposit Insurance Corporation as receiver of the Worthington State Bank, Worthington, Indiana is in the best interest of the public." Record at 241, Exh. B. Worthington did not appeal the court's order of receivership.

On September 16, 1992, Worthington Bancshares, Inc. and Mark D. Van Eaton (collectively, Worthington) filed a tort complaint against DFI for damages arising out of DFI's actions in closing Worthington State Bank. In March 1997, DFI moved for summary judgment, arguing that it was immune from tort liability for its actions in placing the bank in receivership. On January 1, 1999, the trial court denied DFI's motion for summary judgment, finding that there were genuine issues of material fact that prevented summary judgment. Thereafter, the parties moved jointly to certify the trial court's order for interlocutory appeal. On May 26, 1999, the trial court certified its order for interlocutory appeal. On July 27, 1999, we accepted jurisdiction of this appeal pursuant to Ind. Appellate Rule 4(B)(6).

## Discussion and Decision

Initially, we note that Worthington failed to file an appellee's brief. Where the appellee fails to file a brief on appeal, the appellant may prevail by making a prima facie case of error. *Sills v. Irelan,* 663 N.E.2d 1210, 1213 (Ind.Ct.App. 1996). The prima facie error rule relieves this court from the burden of controverting the arguments advanced for reversal, a burden which rests with the appellee. *Olive v. Olive,* 650 N.E.2d 766, 767 (Ind.Ct. App.1995). However, we may in our discretion decide the case on the merits. *Sills,* 663 N.E.2d at 1213. We exercise our discretion to consider the merits of the issue presented.

### Standard of Review

Our summary judgment standard of review is well settled. Upon review of the grant or denial of a motion for sum-

mary judgment, we apply the same legal standard as the trial court. *Erie Insurance Co. v. American Painting Co.*, 678 N.E.2d 844, 845 (Ind.Ct.App.1997). Summary judgment shall be granted if the designated evidence shows that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sizemore v. Arnold*, 647 N.E.2d 697, 698–99 (Ind.Ct.App.1995), *reh'g denied.* Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We will resolve any doubt as to fact or inference to be drawn from the evidence in favor of the party opposing the motion. *Frye v. Trustees of Rumbletown Free Methodist Church*, 657 N.E.2d 745, 747 (Ind.Ct.App.1995), *reh'g denied.* Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts. *Laux v. Chopin Land Associates, Inc.*, 615 N.E.2d 902, 905 (Ind.Ct.App.1993), *trans. denied.*

## Immunity

DFI is responsible for the oversight of state banks. Pursuant to its authority, DFI periodically reviews banks. IND.CODE § 28–11–3–1. Banks are required to operate in a safe and solvent condition. IND. CODE § 28–1–2–6. Based upon an examination of Worthington, DFI concluded that the bank was operating in an unsound and unsafe manner, IND.CODE § 28–11–4–2, and moved to take control of the bank. IND. CODE § 28–1–3.1–2. Worthington seeks damages for losses suffered as a result of the receivership. DFI contends that it is immune from tort liability under the Indiana Tort Claims Act (ITCA).[1] Specifically, DFI asserts that any losses suffered

by Worthington resulted from 1) the initiation of judicial proceedings; 2) the performance of a discretionary function; 3) the enforcement of a law; and 4) the revocation of a license.

### Initiation of Judicial Proceedings

Immunity assumes negligence but denies liability. The purpose of immunity is to ensure that public employees are able to perform their duties without threat of civil litigation. *Carver v. Crawford*, 564 N.E.2d 330, 333 (Ind.Ct.App.1990). First, DFI asserts that it is entitled to immunity pursuant to IND.CODE § 34–13–3–3(5) which states:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

. . .

(5) the initiation of a judicial or an administrative proceeding.

"A 'judicial proceeding' in the context of governmental immunity has been defined as a proceeding 'for the purpose of obtaining such remedy as the law allows.'" *Clifford v. Marion County Pros. Atty.*, 654 N.E.2d 805, 808 (Ind.Ct.App.1995). The majority of decisions focusing upon subsection (5) have considered immunity as it relates to allegations of malicious prosecution. In those cases, our courts have held that in order to promote the efficient function of law enforcement, officers should be free from fear of liability for the initiation of criminal proceedings. *Clifford*, 654 N.E.2d at 808–09. Without immunity for such decisions, the system of law enforcement would breakdown resulting in the obstruction of the proper and efficient administration of justice. *Id.*

The present case does not involve a criminal prosecution. However, the reasons for granting immunity to DFI and its officers are no less compelling than those cited in support of immunity for prosecuting criminal actions. DFI officers must be free to take appropriate actions to super-

---

**1.** IND.CODE § 34–13–3–3.

vise banks for the protection of the public. As our supreme court noted in *State v. Richcreek:*

> Bankers invite general deposits primarily for their own profit, and usually obtain a measure of public patronage, and the expediency of guarding the people against imposition, extortion, and fraud, of affording efficient means of detecting irregular practices, and of learning the true financial condition of the bank, and the necessity of preserving the confidence of patrons in its solvency, and of protecting their interests in case of insolvency, justify inspection and control by the state.

167 Ind. 217, 77 N.E. 1085, 1086 (1906). Without immunity, DFI officers would be reluctant to take possession of unsafe and unsound banks resulting in significant harm to the public from the continued operation of an unsound financial institution. Zealous enforcement of banking regulations increases the probability that depositors will be protected from serious losses. Such enforcement also promotes public confidence in the banking system.

While Worthington is precluded from challenging the proceedings under the Indiana Tort Claims Act, Worthington was not without a remedy. Namely, Worthington could have appealed the decision of the receivership court or requested administrative or judicial review of the actions taken by DFI and the FDIC. Worthington chose not to do so. Because any losses suffered by Worthington were a result of properly initiated judicial proceedings, the trial court erred in denying DFI's motion for summary judgment.

*Performance of Discretionary Functions*

■ DFI also contends that it is immune under Ind.Code § 34–13–3–3(6) which grants immunity to state entities for the performance of a discretionary function. In determining whether a governmental act is discretionary, our courts apply the planning/operational test. *See Peavler v. Board of Commissioners,* 528 N.E.2d 40 (Ind.1988). "Planning functions are discretionary and therefore shielded by immunity, while operational functions are not. Planning functions involve the formulations of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. Operational functions are characterized by the execution or implementation of previously formulated policy." *City of Valparaiso v. Defler,* 694 N.E.2d 1177, 1182 (Ind.Ct.App.1998), *reh'g denied, trans. denied.*

■ DFI contends that the decision to seek receivership in this case involved policymaking, not implementation of rules, and thus it is immune under the ITCA. As our supreme court noted in *Peavler,* in determining whether a function is discretionary and, therefore, immune under the ITCA, the court should look to the purposes of immunity to determine whether those purposes would be furthered by extending immunity to the act in question. The court went on to identify several factors which point toward immunity including: whether the conduct has a regulatory objective; whether the conduct involved the balancing of factors without reliance on a readily ascertainable rule or standard; whether the conduct requires a judgment based on policy decisions; whether the decision involved adopting general principles or only applying them; whether the conduct involved establishment of plans, specifications and schedules; and whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources. *Peavler,* 528 N.E.2d at 46. Courts must also determine whether the decision affects the feasibility of a government program and whether liability will affect the effective administration of the department's function. *Id.*

Here, the decision to seek receivership involved the balancing of competing interests. The statute does not establish a set formula for determining when to seek receivership. Rather, the statute authorizes DFI to take possession of a bank "when-

ever it appears to the department that the financial institution: (1) is insolvent or in imminent danger of insolvency; [or] (2) is in an unsafe or unsound condition...." DFI's decision to initiate receivership proceedings involved balancing competing interests without reliance on an ascertainable rule. Moreover, initiating receivership proceedings requires a judgment based on DFI's policies of protecting the public and ensuring the safe and prudent conduct of the financial institution's business. "The business of banking is affected with a public interest. The safety of banking institutions, and in case of insolvency their liquidation, affects the interest of the public. It is the universal practice to regulate the banking business and to provide special agencies and methods of liquidation thought to best serve the interests of creditors and stockholders and the community involved." *Budnik v. Citizens Trust & Sav. Bank of South Bend,* 220 Ind. 410, 44 N.E.2d 298, 302 (1942).

Furthermore, liability will affect the efficient administration of DFI's oversight duties. If DFI and its officers can be held personally liable for its actions in supervising banks, they will hesitate to take action even when it is in the public interest. Finally, the actions taken by DFI clearly have a regulatory objective: to ensure the operation of financially sound banks. DFI's conduct against Worthington involved a discretionary function. Because DFI is immune from suit for the performance of a discretionary function, it is entitled to summary judgment.[2] We reverse and remand for entry of summary judgment in favor of DFI.

Reversed and remanded.

DARDEN, J., and FRIEDLANDER, J., concur.

---

[2] DFI is clearly immune under I.C. §§ 34–13–3–3(5) and (6). Thus, we need not address DFI's claims of immunity under I.C. §§ 34–13–3–3(7) and (10).