Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2013, 8:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EDWARD R. HANNON**
Steuerwald Hannon Zielinski &
  Witham, LLP
Danville, Indiana

ATTORNEYS FOR APPELLEES:

**JAMES S. STEPHENSON**
**IAN L. STEWART**
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACQUELINE R. CLEMENTS, | ) | |
| | ) | |
| Appellant-Counterclaim Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  54A05-1205-PL-272 |
| | ) | |
| CLINTON COUNTY, INDIANA, BY AND | ) | |
| THROUGH THE BOARD OF | ) | |
| COMMISSIONERS OF THE COUNTY OF | ) | |
| CLINTON, TED R. JOHNSON, BARBARA | ) | |
| CONNER, MICHAEL W. CONNER and | ) | |
| WILLIAM CLINTON, | ) | |
| | ) | |
| Appellees-Counterclaim Defendants. | ) | |

APPEAL FROM THE MONTGOMERY CIRCUIT COURT
The Honorable Harry A. Siamas, Judge
Cause No.  54C01-0907-PL-240

**January 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jacqueline R. Clements ("Clements") appeals the trial court's denial of her motion to correct error, which challenged the dismissal of her counterclaims against Clinton County by and through the Clinton County Board of Commissioners ("the Board"), and her complaint against Ted R. Johnson ("Johnson"), Michael W. Conner ("Michael"), and William Clinton ("Clinton") (collectively, "the County"), and Barbara Conner ("Barbara") (altogether, "the Defendants").

We affirm.

**Issues**

Clements and the Defendants present numerous issues for our review. We restate these as one issue: whether the trial court erred when it granted summary judgment to the Defendants on Clements's claims for malicious prosecution.[1]

**Facts and Procedural History[2]**

Clements was the Clinton County Auditor from August 2004 to November 2008. During her term in office, changes were made to the Indiana Administrative Code that required changes to the County's tax assessment software. Clements, in her capacity as Auditor, was involved in the process of identifying, bidding, and recommending to the Board

---

[1] The Defendants argued before the trial court, and argue on appeal, that Clements's claims must fail because she did not provide appropriate notice under the Indiana Tort Claims Act. The trial court did not address this issue, and because we affirm the trial court's decision on other grounds, we likewise do not address the question of notice.

[2] Much of the factual background of this case is set forth at length in Clinton County ex rel. Bd. of Comm'rs of Cnty. of Clinton, et al. v. Clements, 945 N.E.2d 721 (Ind. Ct. App. 2011), trans. denied, in which this Court affirmed the trial court's order granting Clements summary judgment on the Board's allegations against her. We reproduce here only those facts relevant to our analysis of the instant appeal.

software programs that would comport with the changes in the Indiana Administrative Code.

The County already had a software system in place, but, separate from any required changes related to the Indiana Administrative Code, the existing system lacked certain features that Clements and others deemed desirable. Clements and others with the County investigated other software programs. Among these software programs was a product from Nikish Software Corp. ("Nikish"), which Clements and others recommended that the Board select.

The Board eventually selected the software package Clements recommended, with a final price to the Board of $99,500. After delays in the development and implementation of the software and the production of apparently inaccurate results from the Nikish system, relations between the Board and Nikish soured sometime during 2008. Also around this time, the County's prior software vendor informed the County of the availability of an update for the prior software that was expected to cost significantly less than the Nikish system.

Subsequent to this, the Board sought to cancel the contract with Nikish. On May 20, 2009, the Board filed suit against Nikish and Clements. On June 26, 2009, the Board filed its first amended complaint, alleging breach of contract and fraud against Nikish; alleging negligence, fraud, and intentional interference with contractual relations against Clements; seeking declaratory judgment against Nikish concerning ownership of the software system; and seeking compensation under the Indiana Civil Action by Crime Victim Statute. Clements filed her answer and counterclaims on June 20, 2009, and alleged that the Board had initiated the litigation against her in bad faith and had engaged in abuse of process and

3

malicious prosecution.

In March 2010, Clements filed a motion for summary judgment on the allegations the Board had brought against her, arguing that she was entitled to immunity under the Indiana Tort Claims Act ("ITCA") for discretionary actions taken during her term as County Auditor. The trial court agreed, and also concluded that the evidence produced by the Board did not support a conclusion that she had engaged in fraud. Clements had also sought attorney's fees and costs, but the trial court denied her request. On appeal, this Court affirmed the trial court's grant of summary judgment in favor of Clements, but reversed the trial court's denial of Clements's request for attorney's fees and costs.

After this Court's decision, the Board filed its petition seeking transfer of jurisdiction over the appeal to the Indiana Supreme Court. Our supreme court denied the petition to transfer on September 2, 2011, after which the matter returned to the trial court for consideration of Clements's counterclaims.

On October 7, 2011, Clements moved the trial court for leave to file an amended counterclaim, which would dismiss her allegation of bad-faith litigation as having been resolved upon appeal and leave standing her allegations of abuse of process and malicious prosecution. The trial court granted Clements's motion on October 12, 2011.

On November 2, 2011, the Board filed a motion to dismiss Clements's amended counterclaim for failure to state a claim under Indiana Trial Rule 12(B)(6), arguing that the Board was immune from liability under the Indiana Tort Claims Act. The trial court agreed and entered an order dismissing Clements's amended counterclaim.

4

Clements then filed her second amended counterclaim against the Board, which incorporated into it a complaint against Johnson, Clinton, and Michael Conner, and Barbara Conner, each as individuals not entitled to receive Indiana Tort Claims Act-compliant notices for varying reasons. Clements's claims against the Defendants no longer differentiated between abuse of process and malicious prosecution, and instead alleged that each of the Defendants committed the tort of malicious prosecution.

On January 9, 2012, the Defendants filed a motion to dismiss Clements's second amended counterclaim and complaint. The Defendants argued in the motion that Clements had failed to seek leave of the trial court to amend her counterclaim a second time, that none of the individuals against whom Clements sought relief had previously been a named party to the litigation and thus were not proper parties, that her claims for malicious prosecution were barred by immunity under the Indiana Tort Claims Act as to the Board and all individual defendants, and that Clements's claims failed for failure to file a tort notice as required under the Tort Claims Act. Clements responded on January 24, 2012.

On January 27, 2012, the Defendants filed a reply brief. In support of their arguments, the Defendants designated evidentiary material in the form of a transcript of deposition testimony offered by Barbara Conner. Clements filed her surreply on February 17, 2012, and designated additional evidentiary material, including portions of depositions from Clinton, Johnson, and Michael Conner.

On March 23, 2012, the trial court granted the Defendants' motion to dismiss Clements's second amended counterclaim and complaint. On April 19, 2012, the trial court

designated its order as a final judgment pursuant to Indiana Trial Rule 54(B). On April 23, 2012, Clements filed her motion to correct error; on April 25, 2012, the Defendants filed their response.

On April 27, 2012, the trial court entered an order denying Clements's motion to correct error. This appeal followed.

**Discussion and Decision**

Standard of Review

Clements appeals the trial court's denial of her motion to correct error. We generally review an order on a motion to correct error for an abuse of discretion. Singh v. Lyday, 889 N.E.2d 342, 348 (Ind. Ct. App. 2008), trans. denied. An abuse of discretion occurs when the trial court's decision was against the logic and effect of the facts and circumstances before it. Id.

Clements's motion to correct error challenged the trial court's entry of an order dismissing her second amended complaint under Trial Rule 12(B)(6). Ordinarily, we review such orders de novo and without deference to the trial court's decision. Shi v. Yi, 921 N.E.2d 31, 36 (Ind. Ct. App. 2010). Here, however, both the Defendants and Clement designated various evidentiary materials to their briefing on the Rule 12(B)(6) motion. "If, on a motion, asserting the defense … to dismiss for failure of the pleading to state a claim … matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Ind. Trial Rule 12(B). We therefore review the trial court's order dismissing Clements's second

6

amended complaint pursuant to our standard of review for orders granting summary judgment.

> Our standard of review for a trial court's ruling on a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Id. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id.

Crosson v. Berry, 829 N.E.2d 184, 192 (Ind. Ct. App. 2005), trans. denied.

Upon appellate review of a trial court's entry of summary judgment, we presume the validity of a trial court's entry of summary judgment. Williams v. Tharp, 914 N.E.2d 756, 762 (Ind. 2009). A party challenging summary judgment on appeal must therefore bear the burden of proving that the movant was not entitled to the entry of summary judgment. Id.

> We will affirm a trial court's entry of summary judgment if the judgment can be sustained on any theory or basis in the record. Town of Plainfield [v. Paden Eng'g Co.], 943 N.E.2d [904,] 908 [(Ind. Ct. App. 2011), trans. denied]. We review a decision on summary judgment carefully, however, to ensure that a party was not properly denied his day in court. Haire v. Parker, 957 N.E.2d 190, 195 (Ind. Ct. App. 2011), trans. denied. The trial court's findings and conclusions upon entry of summary judgment are not binding upon our review, though they "offer valuable insight into the trial court's rationale for its review and thus facilitate appellate review." Raisor v. Jimmie's Raceway Pub, Inc., 946 N.E.2d 72, 75 (Ind. Ct. App. 2011).

McEntee v. Wells Fargo Bank, N.A., 970 N.E.2d 178, 182 (Ind. Ct. App. 2012).

### Waiver and Prejudice

We turn first to Clements's argument that the trial court's entry of summary judgment was erroneous because the County failed to timely plead affirmative defenses. Clements

7

advances two grounds for this argument. First, she argues that the County waived its ITCA-based affirmative defenses because it failed to plead those defenses prior to her filing of the second amended counterclaim. Second, Clements contends that even if the County did not waive its affirmative defenses, its decision to advance those defenses relatively late in the proceedings prejudiced her case. Clements therefore argues that the County could not properly rely upon its ITCA immunity defense when it sought to dismiss her counterclaims. As a result of either approach, she claims that the trial court erred when it granted summary judgment to the County on the basis of its ITCA immunity defenses.

The County moved to dismiss Clements's counterclaims against it under Trial Rule 12(B)(6). The rule provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required; except that at the option of the pleader, the following defenses may be made by motion: …
>
> (6)　　Failure to state a claim upon which relief can be granted….

T.R. 12(B).

The defense of failure to state a claim may be asserted in a responsive pleading, such as an answer to a complaint, or separately by motion. Id. A motion to dismiss under Rule 12(B)(6) made separately from a responsive pleading must be submitted to the court "before pleading if a further pleading is permitted" or within twenty days after service of the prior pleading where no responsive pleading is required. Id. However, "[a] defense of failure to state a claim upon which relief can be granted … may be made in any pleading permitted or ordered under Rule 7(A) or by motion for judgment on the pleadings, or at the trial on the

8

merits." T.R. 12(H)(2). Whether a defense under Rule 12(B) has been submitted to the trial court by pleading or on motion, the defense "shall, upon application of any party or by order of court, be determined before trial unless substantial justice requires the court to defer hearing until trial." T.R. 12(D).

Generally, an affirmative defense must be submitted in a responsive pleading at the earliest possible opportunity. T.R. 8(C); City of South Bend v. Dollahan, 918 N.E.2d 343, 349 (Ind. Ct. App. 2009) (observing that Rule 8(C) "provides that a party seeking to raise an affirmative defense must specifically plead said offense in its responsive pleading"), trans. denied. "While TR. 8(C) appears to impose an absolute duty to raise an affirmative defense in a responsive pleading, Indiana courts have modified the mandatory nature of the rule by interpreting it in conjunction with TR. 15(B)." Elkhart Cnty. Farm Bureau Coop. Ass'n, Inc. v. Hochstetler, 418 N.E.2d 280, 282 (Ind. Ct. App. 1981). Trial Rule 15(B) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

"'Either party may timely demand strict adherence to the predetermined route (pleadings) or, if deviation is permitted, the time necessary to prepare to meet the new issue. But when the trial has ended without objection as to the course it took, the evidence then controls.'" Hochstetler, 418 N.E.2d at 282 (quoting Indianapolis Transit Sys., Inc. v. Williams, 148 Ind. App. 649, 658, 269 N.E.2d 543, 550 (1971)).

Later decisions of this Court have extended this to matters raised on summary judgment, and have identified the critical issue to be "'not whether the defendant could have

9

raised his affirmative defense earlier, but 'whether the defendant's failure to raise the affirmative defense earlier prejudiced the plaintiff.'" Dollahan, 918 N.E.2d at 350 (quoting Borne by Borne v. Nw. Allen Cnty. Sch. Corp., 532 N.E.2d 1196, 1199 (Ind. Ct. App. 1989), trans. denied). This is consistent with the guidance of this Court and our Supreme Court that trial rules are not to serve as traps "'to be set by counsel to catch unsuspecting litigants,'" and with our Supreme Court's rejection of "the gaming view of our legal system." Binder v. Benchwarmers Sports Lounge, 833 N.E.2d 70, 75 (Ind. Ct. App. 2005) (quoting Smith v. Johnston, 711 N.E.2d 1259, 1264 (Ind. 1999)).

Here, Clements argues that the County failed to timely plead its immunity defense under the ITCA in response to her claims for malicious prosecution, and thus waived the defense. Yet unlike in Dollahan or Hochstetler, the proceedings here concerning Clements's counterclaims against the County had not yet moved beyond the pleading stage: Clements appeals from a motion to correct error following an order dismissing her claims after a motion under Trial Rule 12(B)(6), which was adjudicated as a summary judgment motion under Trial Rule 56 due to both parties' designation of evidentiary materials. Thus, we cannot conclude that the County waived any affirmative defenses by failing to plead them before Clements had filed her second amended counterclaim.

Nor do we think Clements was in any manner prejudiced as a result of the County's timing in challenging her counterclaims based upon immunity under the ITCA. Clements argues that by failing earlier to plead the affirmative defense of immunity or to move to dismiss on that basis, the County's delay prejudiced her because she forewent defamation

10

counterclaims that would have survived a challenge based upon immunity under the ITCA. Clements claims this is so because the County's failure to plead immunity until the time of her second amended complaint led her to refrain from alleging defamation within the applicable limitation period provided by the statute of limitation.

Yet Clements points to no facts establishing that she was prejudiced by, for example, being precluded from bringing a counterclaim because of a lack of evidence or knowledge necessary to properly plead a defamation claim. Rather, her claim of prejudice amounts to summary assertions that she would have pleaded a defamation claim had she known the County would assert immunity to her claims of abuse of process and malicious prosecution. This is not sufficient to rise to the level of prejudice required to preclude the County's assertion of immunity under the ITCA as an affirmative defense against Clements's counterclaims, and we therefore decline to reverse the trial court's decision on that basis.

### Intentional Misrepresentation and the Tort Claims Act

Finding no error in the trial court's decision that the County was not precluded from raising affirmative defenses under the ITCA, we now turn to whether the trial court erred when it held that the County's affirmative defense entitled it to judgment as a matter of law on Clements's malicious prosecution claim.[3]

The ITCA applies to suits and claims in tort against governmental entities and employees. Ind. Code §§ 34-13-3-1 & 34-30-7-1. The ITCA affords state and local

---

[3] Clements's counterclaims alleged malicious prosecution as to Johnson, Michael Conner, and Clinton as individuals. The trial court's decision at summary judgment concluded that these individuals were acting in their capacities as agents or employees of the Board, and thus were entitled to immunity under the ITCA. Clements makes no argument that this aspect of the trial court's entry of summary judgment was in error. Therefore, we also treat Johnson, Michael, and Clinton as agents or employees of the Board.

11

government agencies immunity from certain tort claims in the wake of the Indiana Supreme Court's decision in Campbell v. State, 259 Ind. 55, 284 N.E.2d 733 (1972), "which abolished sovereign immunity in Indiana for most purposes." Cantrell v. Morris, 849 N.E.2d 488, 495 (Ind. 2006).

Indiana Code section 34-13-3-3 enumerates twenty-four bases for immunity from tort claims brought against governmental entities. Among these are immunity from liability for "[t]he initiation of a judicial or an administrative proceeding" and from liability for a "[m]isrepresentation if unintentional." I.C. §§ 34-13-3-3(6) & (14).

> Whether a governmental entity is immune from liability under the ITCA is a question of law for the court to decide. Gibson v. Evansville Vanderburgh Bldg. Comm'n, 725 N.E.2d 949, 952 (Ind. Ct. App. 2000), trans. denied. Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity. Greater Hammond Community Servs., Inc. v. Mutka, 735 N.E.2d 780, 781 (Ind. 2000). The party seeking immunity bears the burden of establishing that its conduct comes within the ITCA. Peavler, 528 N.E.2d at 46.

Mangold ex rel. Mangold v. Ind. Dept. of Natural Res., 756 N.E.2d 970, 975 (Ind. 2001).

Clements argues on appeal that the trial court improperly construed the immunity provisions of the ITCA such that the court concluded that the County was immune from her claim for malicious prosecution predicated on an act of misrepresentation. "[A] cardinal rule of statutory construction … is to 'ascertain the intent of the drafter.'" Siwinski v. Town of Ogden Dunes, 949 N.E.2d 825, 829 (Ind. 2011) (quoting State v. Carmel Healthcare Mgmt., Inc., 660 N.E.2d 1379, 1386 (Ind. Ct. App. 1996), trans. denied). Where the language of a statute is clear and unambiguous, there is no room for judicial construction. Id. at 828. Where ambiguity exists that lends the statute to more than one interpretation, we interpret the

12

statute "to effect the intent of the legislature." Id. We must consider the statute in its entirety and construe any ambiguity to be "consistent with the entirety of the enactment." Id. Doing so "allows us to better understand the reasons and policies underlying the Act." Id. We ascertain the legislature's intent "'by giving effect to the ordinary and plain meaning of the language used.'" Id. at 829 (quoting Clifft v. Ind. Dep't of State Revenue, 660 N.E.2d 310, 316 (Ind. 1995)).

This Court and our supreme court have interpreted subsection 6 to provide broad immunity to government units and their employees from suits for claims of malicious prosecution, including immunity from claims over the initiation of legal actions that encompassed apparent acts of bad faith, including both criminal and civil proceedings. See Clifford v. Marion Cnty. Prosecuting Att'y, 654 N.E.2d 805, 809-10 (Ind. Ct. App. 1995) (applying immunity from suit for malicious prosecution to child support enforcement matters). As the Clifford court observed, "[i]n view of the fact that the primary tort which arises from initiating legal proceedings necessarily includes the element of bad faith, the presence of bad faith cannot remove the conduct from the very protection envisioned by the Act." Id. at 809.

Subsection 14 provides immunity to governmental bodies and their employees for "[m]isrepresentations if unintentional." This Court has held that negligent misrepresentations fall within the immunity afforded by the statute. Gibson v. Evansville Vanderburgh Bldg. Comm'n, 725 N.E.2d 949, 954-55 (Ind. Ct. App. 2000) (citing United States v. Neustadt, 366 U.S. 696 (1961)) (holding that "our legislature intended to immunize

13

actions falling under the commonly understood definition of negligent misrepresentation"), trans. denied. But we have declined to extend immunity for government employees who have committed a material misrepresentation of a past or existing fact, which misrepresentation was untrue and known to be untrue or recklessly made, and upon which misrepresentation another party relied and was induced thereby to act to his detriment. Parke Cnty. v. Ropak, Inc., 526 N.E.2d 732, 736-36 (Ind. Ct. App. 1988), trans. denied.

Here, Clements and the County dispute the import of a specific passage of our opinion in Ropak:

> We do not believe the legislature intended by the language of subsection (13) to grant immunity for intentional misrepresentation so long as the factual setting of the misrepresentation fits within another subsection of the statute. Rather, subsection (13) provides that a government entity will be immune from liability for misrepresentation only where the misrepresentation was unintentional; conversely, no immunity will apply to any intentional misrepresentation, regardless of the factual setting.

Id. at 738 (addressing what is now subsection 34-13-3-3(14) of the ITCA immunity statute) (emphasis in original).

At summary judgment, the trial court concluded that the County was entitled to immunity from Clements's malicious prosecution claim under the judicial or administrative process immunity afforded by subsection 34-13-3-3(6). Clements argues that because the County's allegations in its complaint against her were intentionally-made false statements—that is, she characterizes these misrepresentations as "intentional misrepresentations"—subsection 34-13-3-3(14), which provides immunity from suit for unintentional misrepresentations, permits her claim for malicious prosecution to move forward. The trial

14

court rejected this argument, holding that intentional misrepresentation is a tort akin to fraud and that Clements had not properly stated a claim for the tort, the misrepresentation exception did not operate to save her malicious prosecution claim, and thus her claim against the County failed. Clements argues this was an erroneous interpretation of the statute.

Clements's argument pushes both the ITCA and our decision in Ropak too far. We cannot agree with Clements's argument that the legislature meant for a "[m]isrepresentation if unintentional," I.C. § 34-13-3-3(14), to abolish the distinction between the tort of intentional misrepresentation and any other false statement made intentionally and with knowledge of its falsity. As this Court observed in Ropak, the ITCA precludes immunity for government entities where "the nature of the action is intentional misrepresentation," that is, "actionable, factual misrepresentations." Ropak, 526 N.E.2d at 738, 739. We find no ambiguity in the statute, nor do we find any reason to diverge from our conclusions in Ropak in this regard.

Moreover, Clements's pleadings and arguments do not indicate how any representation of the County outside of court filings—which come within the gamut of actions contemplated by the tort of malicious prosecution—were false and induced her detrimental reliance upon those representations. That is, she presents no allegations that amount to "actionable, factual misrepresentations." Id. at 739. The trial court was therefore correct in granting the County summary judgment on that basis.

Just as we observed in Ropak that "a defendant cannot shield himself from liability under the ITCA by characterizing his action as something it is not," id. at 738, so too a

plaintiff cannot shield himself from the effects of immunity by characterizing his claim as something it is not. Clements complains of the sort of dishonesty that Indiana courts have previously concluded were part-and-parcel of the tort of malicious prosecution; she neither pled an action for, nor designated evidentiary material supportive of a claim of intentional misrepresentation. We therefore cannot conclude that the trial court erred when it granted summary judgment to the County (that is, the Board and other county employees whom Clements alleges engaged in malicious prosecution within the scope of their employment or agency on behalf of the Board) on the basis of the malicious prosecution privilege and rejected Clements's arguments concerning any claimed intentional misrepresentations.

<u>Immunity under the ITCA for Barbara</u>

We turn next to Clements's arguments that the trial court erred when it granted summary judgment in favor of Barbara Conner. Clements argues that the trial court erroneously concluded that Barbara was entitled to immunity under the ITCA, and that the trial court erred when it concluded that Clements's claim for malicious prosecution must fail as a result. We affirm the trial court on a slightly different basis—whether Barbara was entitled to summary judgment on Clements's claim for malicious prosecution.

The tort of malicious prosecution "rests on the notion that the plaintiff … has been improperly subjected to legal process." City of New Haven v. Reichhart, 748 N.E.2d 374, 378 (Ind. 2001). To recover under a claim for malicious prosecution, a plaintiff must establish that (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted with malice in doing so; (3) the defendant had no probable

16

cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. Id.

The designated materials that the parties submitted in proceedings surrounding the County's motion to dismiss the second amended complaint are, we think, dispositive as to the malice element of the tort. "Malice 'in fact' must be shown here; malice 'in law' such as is required in defamation actions is not sufficient." Satz v. Koplow, 397 N.E.2d 1082, 1085 (Ind. Ct. App. 1979). Malice may be inferred from a lack of probable cause necessary to bring suit. Kroger Food Stores, Inc. v. Clark, 598 N.E.2d 1084, 1087 (Ind. Ct. App. 1992), trans. denied. Personal hatred or a desire for revenge is not necessary to establish malice, though neither is such evidence precluded from consideration. Satz, 397 N.E.2d at 1085. Failure to make a proper inquiry into underlying facts on the part of the defendant in such an action, which defendant initiated the original suit giving rise to the action for malicious prosecution, is not enough to sustain an action for malicious prosecution. Mirka v. Fairfield of America, Inc., 627 N.E.2d 449, 451-52 (Ind. Ct. App. 1994), trans. denied. Rather, that failure must be culpable, that is, malice that rises above the level of mere negligence. Id.

Clements's second amended counterclaim alleged with respect to Barbara's conduct:

13. B. Conner, after leaving the employment of Clinton County, engaged in conduct to establish the Tax Committee, and although not a member of the Tax Committee, participated in numerous meetings of said Committee and during said meeting, conveyed false information with respect to the workings of Nikish Software and as to the operations of the Treasurer's Office.

14. B. Conner's motivation for working to establish the Committee was to maliciously initiate and further the institution of a groundless lawsuit against Clements in order to personally harm Clements because

17

Clements did not support B. Conner in B. Conner's efforts to become Clinton County Treasurer.

15. M. Conner was a member of the Board of Commissioners at the time Clements was sued. He is also the husband of B. Conner…. M. Conner, in conspiracy with his wife [and others] put in motion the plan to sue Clements in order to harm her.

***

24. B. Conner is sued individually and not as an employee of Clinton County. The acts and conduct for which she is being sued occurred after she had left the employment of Clinton County and thus she too is not entitled to a Tort Claim Notice.

***

26. The actions of … B. Conner [and other defendants] constitute malicious prosecution. As a direct and proximate result of their malicious prosecution, Clements has been damaged in that she has lost opportunities of employment, has suffered extreme emotional distress, has had severe and lasting damage done to her reputation and good name, all of which is compensable under the law and for which each defendant is jointly and severely [sic] responsible.

(Appellant's App. at 106-10.)

Along with their brief in reply to Clements's opposition to the motion to dismiss, the Defendants designated as evidentiary material portions of deposition testimony Barbara gave. That testimony indicated that in September 2008, before her employment with the County Treasurer's office ended, Barbara initiated the creation of a committee to review the results of the software the County had purchased from Nikish to handle property tax assessment matters. Barbara testified that she requested certain individuals be part of the committee, met with the committee once before the end of her employment, and provided documents she received from the Indiana Department of Local Government Finance ("DLGF") concerning

18

discrepancies in Clinton County tax bills and collections. Barbara testified that while Michael agreed with her that forming the committee was a good idea, she intentionally kept Michael from being involved because of his personal difficulties with Clements, though she also did not request that Clements be part of the committee. When asked why she decided to convene the committee, she testified that there were problems with the results generated by the Nikish-provided software, and stated, "I wanted to show this committee that I was in balance when I left" employment with the County. (Appellant's App. at 256.)

Even construed in a light most favorable to Clements as the non-movant, this evidentiary material satisfied the County's and Barbara's burden of production to establish a lack of question of material fact both as to Barbara's status as an employee of the County at the time of the alleged conduct (thus entitling her to immunity under the ITCA), as well as her involvement in any intended malicious prosecution of Clements. Given this evidentiary material, the burden shifted to Clements to provide materials that would show the existence of a genuine issue of material fact as to the elements of her claim.

We cannot conclude that she carried this burden as to her claim against Barbara. In support of her surreply to the County's responsive brief, Clements designated as evidentiary material portions of deposition testimony from defendants Clinton, Johnson, and Michael Conner. Clinton's deposition testimony provided evidence that Barbara had met with the software committee on multiple occasions—"probably about six times." (Appellant's App. at 284.) Clinton's testimony also provided evidence that Barbara had provided documents related to problems with the Nikish system at the committee's request. Clinton testified that

"there was questions [sic] that we had, then we'd would go [sic] back and try to look at information," and "[w]e asked for them at that point. She said she had had, kept records of some other things that were issues that she heard were problems still … but we interviewed her for different questions as far as relating to this." (Appellant's App. at 285.)

Clinton's testimony corresponded with deposition testimony from both Barbara and Michael Conner. Michael indicated that Barbara was not "involved in that issue of transitioning back from Nikish to Manatron … unless she was called and referred upon," which occurred only on occasion. (Appellant's App. at 292.)

Johnson's deposition testimony supported Barbara's testimony that her employment with the treasurer's office ended at the end of September 2008. Johnson further testified that concerns with the Nikish software had arisen as early as February 2007, and that it was "well before November" that a committee was formed "to make recommendations to the commissioners on what to do about the Nikish contract." (Appellant's App. at 289-90.)

Taking all the designated materials together and construing them in a light most favorable to Clements as the non-movant, we cannot conclude Clements successfully overcame her burden of demonstrating the existence of any questions of material fact respecting her claim against Barbara for malicious prosecution. The designated evidence gives rise to an inference that Barbara was involved with the committee's activities after the end of her employment with the Treasurer's Office. However, it does not establish any question of material fact as to malicious intent on Barbara's part. Indeed, even taken in a light most favorable to Clements, the designated materials submitted by Clements do not give

rise to any inferences in her favor as to the question of malice and indicate that Barbara is entitled to judgment as a matter of law on Clements's claim against her.

We therefore affirm the trial court's entry of summary judgment and order dismissing Clements's complaint against Barbara.

## Conclusion

The trial court did not err when it dismissed Clements's complaint against the Defendants.

Affirmed.

VAIDIK, J., and BROWN, J., concur.