**CELEBRATION FIREWORKS, INC.,**
**Appellant (Plaintiff Below),**

v.

**Wayne SMITH, Appellee**
**(Defendant Below).**

No. 50S03–9712–CV–657.

Supreme Court of Indiana.

May 1, 2000.

Casey D. Cloyd, Muncie, Indiana, Attorney for Appellant.

Martin D. Hoke, Natalie Shrader, Schererville, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Celebration Fireworks, Inc. filed a defamation suit against the City of Plymouth's fire chief after the chief made statements about Celebration while conducting an inspection at the premises of its prospective landlord. The trial court granted summary judgment for the chief, ruling that the suit was barred because Celebration did not comply with the notice provisions of the Indiana Tort Claims Act. It also held that the chief's remarks were protected by qualified privilege.

The Indiana Court of Appeals reversed. *Celebration Fireworks, Inc. v. Smith,* 682 N.E.2d 569 (Ind.Ct.App.1997). We grant transfer. Ind. Appellate Rule 11(B)(3).

### The Events Themselves

Celebration Fireworks once rented property within the city limits of Plymouth, and it had disputes with the city over the sale of fireworks. At one point, Plymouth sought injunctive relief against Celebration. Celebration contracted to rent space at George Kendall's motorcycle dealership because his building is one block outside the city limits. Kendall's shop is, however, within the Plymouth Fire Department's service area.

In the midst of the busy fireworks season on July 2, 1993, Plymouth Fire Chief Wayne Smith went to conduct a safety inspection at Kendall's dealership, where Celebration was setting up shop. Accord-

ing to Celebration's complaint, Smith, in his capacity as fire chief, told the lessor that "[t]hese people do not pay their bills." (R. at 20.)[1] He urged Kendall to "[g]et your money in advance," and said, "These people are gypsies." (R. at 5.)

In a deposition, Kendall said he knew Smith in his capacity as fire chief because Smith had been conducting fire inspections of Kendall's motorcycle business for about fifteen years. He testified that Smith told him he was in the shop in his capacity as city fire chief. Kendall recalled that Smith spent about five minutes in his shop and looked around some before he left. He said Smith appeared "upset" that Celebration would be renting space from him. (R. at 51–52.) During the visit Smith told him that a firewall would have to be constructed to separate the fireworks sale area from the rest of the motorcycle shop.

Celebration asserts Smith was attempting to talk Kendall out of leasing the space in an effort to keep Celebration out of Marshall County. Celebration also alleges it had to pay additional rent as a result of those statements.

### The Notice and the Lawsuit

Celebration filed a notice under the Indiana Tort Claims Act on January 3, 1994, in an attempt to preserve any potential claim against the City of Plymouth. *Celebration Fireworks,* 682 N.E.2d at 571. Celebration later filed suit against Smith on June 3, 1994.

In his answer to the suit, Smith denied he ever made the statements attributed to him. He also asserted Celebration's complaint was governed by the Tort Claims Act. Ind.Code Ann. § 34–4–16.5–1 (West 1983).[2] If so, it was barred because Celebration had not filed notice of the claim within 180 days of the alleged tort, as

---

1. In a later deposition, the chief said that Celebration's former landlord, Rick Miller, told him the fireworks seller had not paid all of its rent. (R. at 26, 28–29.)

2. Title 34, including the provisions containing the Tort Claims Act, was repealed and recodified at Ind.Code § 34–13–3. For clarity, all citations to the Tort Claims Act in this opinion reflect the applicable statutes at the time of the lawsuit.

required by Ind.Code § 34–4–16.5–7 and Ind. Code § 34–4–16.5–9. Smith also claimed he was immune from liability under Ind.Code § 34–4–16.5–3(13).[3]

In a motion for summary judgment, Smith asserted that a January 3, 1994 letter from Celebration's attorneys to the Mayor of Plymouth that contained the notation "Tort Claims Notice" was intended to serve as a tort claims notice required by Ind.Code § 34–4–16.5–7 and Ind.Code § 34–4–16.5–9. (R. at 13–14.) As such, that notice was due on or before December 29, 1993, Smith argued.

In granting Smith's motion for summary judgment, the trial court determined Smith was acting within the scope of his employment as fire chief when he inspected Kendall's store. Any statements he made were either within the scope of his employment or made in good faith and protected by qualified privilege. Further, the trial court determined that a tort claim against the City of Plymouth had not been filed in time.

On appeal, the Court of Appeals focused on two issues. The first was whether Smith's conduct was within the scope of employment, so as to trigger the Tort Claims Act. His statements about Celebration's bill-paying history, it said, were made on his own initiative and not in service to his employer. *Celebration Fireworks*, 682 N.E.2d at 572. Because the statements were made outside the sphere of his employment, the Court of Appeals concluded, the notice provision of the Tort Claims Act did not apply and operate to bar Celebration's claim. *Id.*

The Court of Appeals also reviewed Smith's claim of qualified privilege. It held that conflicting inferences over whether Smith's statements were motivated by ill will precluded a grant of summary judgment on the issue of qualified privilege. In light of these conclusions, the

Court of Appeals reversed the trial court's grant of summary judgment. *Id.*

### Scope of Employment

■ The Tort Claims Act governs lawsuits against political subdivisions like the City of Plymouth and against their employees. It requires early notice that a claim exists, and it provides substantial immunity for conduct within the scope of the employees' employment.

■ "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Indiana Dept. of Correction v. Stagg*, 556 N.E.2d 1338, 1343 (Ind.Ct.App.1990), *trans. denied.* The Tort Claims Act bars suits for which timely notice has not been given.

Much of the caselaw examining the acts of governmental employees has revolved around various immunities specified in the Tort Claims Act. *See, e.g., Foster v. Pearcy*, 270 Ind. 533, 387 N.E.2d 446 (1979) (defamation suit against prosecutor barred by discretionary function immunity), *cert. denied*, 445 U.S. 960, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1980); *Jacobs v. City of Columbus*, 454 N.E.2d 1253 (Ind.Ct.App. 1983) (defamation suit against police detectives barred under discretionary function and failure to enforce law immunities).

We have opined, without deciding, that these immunities might be lost when an employee acts "so far out of the scope of his or her employment as to amount to fraud or criminal conduct." *Poole v. Clase*, 476 N.E.2d 828, 831 (Ind.1985). In *Seymour Nat'l Bank v. State*, 428 N.E.2d 203, 204 (Ind.1981), we touched on the same issue by saying immunity might be lost if conduct were so "outrageous as to be in-

---

**3.** That section, in relevant part, provides:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from: ...

(13) misrepresentation if unintentional[.]

compatible with the performance of the duty undertaken." Our more recent pronouncements, including our overruling of *Seymour Nat'l Bank,* suggest that governmental employers will not be broadly immune under some of these provisions. *See Quakenbush v. Lackey,* 622 N.E.2d 1284 (Ind.1993) (city where officer drove squad car at night without using headlights not immune under "failure to enforce law").

■ The threshold question in this case ·is whether the Tort Claims Act applies at all to the acts by Smith that gave rise to the suit. That is, was Smith acting "within the scope of his employment"?

The Restatement of Agency provides some general guidance for assessing the type of conduct that is within the scope of employment: "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Restatement (Second) Agency § 229 (1958).

■ The Restatement stresses that "[t]o be incidental, however, [an act] must be one which is subordinate to or pertinent to an act which the servant is employed to perform." Restatement (Second) Agency § 229 cmt. b (1958). Even tortious acts may fall within the scope of employment. In *Kemezy v. Peters,* 622 N.E.2d 1296 (Ind.1993), we said an employee's tortious act may fall within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business." *Kemezy,* 622 N.E.2d at 1298 (quoting *Stropes v. Heritage House Childrens Ctr.,* 547 N.E.2d 244, 247 (Ind.1989)).

The U.S. Supreme Court recently noted that this doctrine "has traditionally defined the 'scope of employment' as including conduct 'of the kind [a servant] is employed to perform,' occurring 'substantially within the authorized time and space limits,' and 'actuated, at least in part, by a purpose to serve the master,' but as excluding an intentional use of force 'unexpectable by the master.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 793, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting Restatement (Second) Agency § 228(1)).

Plainly, Smith was on public time, performing a function that was central to the position he held. As the Restatement suggests, this is a pretty good start, but it may not always be dispositive. The task is thus to decide whether the fire chief's statements were "incidental to the conduct authorized" as the Restatement puts it, or as our opinion in *Kemezy* said, "to an appreciable extent to further his employer's business."

### The *VanValkenburg* Formulation

During his service on the Court of Appeals, Justice Rucker provided a helpful way of answering such a question in *VanValkenburg v. Warner,* 602 N.E.2d 1046 (Ind.Ct.App.1992). Julie VanValkenburg was a student in a class taught by Warner at Indiana State University. Upon leaving the course's final session, held at Warner's residence, she fell on the front porch and broke her ankle. Without ·filing a tort claim notice on either the university or Warner, she sued Warner for negligent maintenance of his home. ·Warner claimed the protection of the Tort Claims Act, saying he was acting within the scope of his employment when he conducted the class.

Relying on our opinion in *Poole v. Clase,* 476 N.E.2d 828 (Ind.1985), the *VanValkenburg* court held that "governmental employment, standing alone, does not trigger the notice provisions of the Indiana Tort Claims Act." *VanValkenburg,* 602 N.E.2d at 1049. Rather, the court said, "notice is required only if the act or omission *causing* the plaintiff's loss is within the scope of defendant's employment." *Id.* It concluded that since maintenance of Warner's residence was not a thing he did in service of the university, it was beyond the scope of his employment.

■ In this case, "the act causing the plaintiff's loss" consisted of several statements, three sentences in all, that were part of a longer discussion between the

**454**

fire chief and the owner of a business being inspected prior to the start of Celebration's tenancy. We think that splitting out these sentences so as to place Smith outside the scope of his employment puts too fine a point on the matter and helps neither employees nor claimants.

If employees were easily declared outside the scope of the act for things they say during the otherwise ordinary course of their employment, the threat to "their independent judgment necessary to carry out their duties," *Stagg,* 556 N.E.2d at 1343, would be greater. Moreover, claimants would more often find themselves limited to recovery against the private assets of employees rather than those of governments.

This is not to say whether, had notice been given, Celebration might have been entitled to a judgment or whether the chief might have been entitled to one of the enumerated immunities of the Act. We conclude only that Judge Embrey was correct in holding that the chief's statements were incidental to an activity that was part of the chief's duty, inspecting business premises.

### Conclusion

Accordingly, we affirm the judgment of the trial court.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., not participating.