ATTORNEYS FOR APPELLANTS
Adam J. Sedia
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEYS FOR APPELLEES
Gregory F. Zoeller
Attorney General of Indiana
Elizabeth C. Rogers
David Steiner
Deputy Attorneys General
Indianapolis, Indiana

David L. Jones
Robert W. Rock
Jones Wallace, LLC
Evansville, Indiana



# In the
# Indiana Supreme Court

No. 82S01-1301-CT-19

F.D., G.D., AND T.D. B/N/F J.D. AND M.D.; AND
J.D. AND M.D. INDIVIDUALLY,                                    *Appellants (Plaintiffs),*

v.

INDIANA DEPARTMENT OF CHILD SERVICES,
EVANSVILLE POLICE DEPARTMENT, AND
VANDERBURGH COUNTY PROSECUTOR'S OFFICE,           *Appellees (Defendants).*

Appeal from the Vanderburgh Superior Court, No. 82D03-0906-CT-3283
The Honorable Richard D'Amour, Judge

On Transfer from the Indiana Court of Appeals, No. 82A01-1109-CT-432

**November 26, 2013**

**Dickson, Chief Justice.**

In this action for damages, the plaintiffs (parents J.D. and M.D., individually and on be-half of their children, F.D., G.D., and T.D.) allege mishandling of child abuse reports by the In-diana Department of Child Services (DCS), the Evansville Police Department (EPD), and the

Vanderburgh County Prosecutor's Office (VCPO). The trial court granted summary judgment to all defendants on grounds of immunity, and the plaintiffs have appealed the grant of summary judgment in favor of DCS and EPD, but not as to VCPO. As explained below, we affirm summary judgment in favor of EPD, but we reverse the summary judgment entered in favor of DCS.

In June of 2007, M.D. ("Mother") informed DCS that her then four-year-old son, T.D. ("Son"), had been molested by her then twelve-year-old nephew, L.C. ("Nephew"). DCS initiated an investigation and interviewed Son and his then two-year-old twin sisters, F.D. and G.D. Son disclosed that he had been inappropriately touched by Nephew. Both two-year-old twin daughters denied being inappropriately touched by Nephew. DCS then referred the matter to the EPD for a delinquency investigation. In July of 2007, Detective Jeff Minto of EPD interviewed Nephew. During the interview, Nephew admitted to inappropriately touching four of his cousins, including Son and one of the twin daughters, F.D. Detective Minto informed DCS of Nephew's admissions, including the touching of F.D., and DCS chronicled Nephew's admissions in a "Contact Log Report." Neither DCS nor EPD informed Mother or Father of Nephew's admission to inappropriately touching their daughter, F.D. EPD then referred Nephew's case to the Vanderburgh Juvenile Court for delinquency proceedings.

On July 26, 2007, Juvenile Probation Officer Bernie Faraone conducted an intake interview with Nephew. During this interview, Officer Faraone read an account of Nephew's alleged offenses, including Nephew's admission to touching F.D. Mother was present for at least a portion of this interview, but was not informed of Nephew's molestation of her daughter, F.D.[1] On August 27, 2007, Nephew was adjudicated delinquent and placed on probation for nine months. Mother was not informed of Nephew's adjudication. On July 31, 2008, Mother learned of Neph-

---

[1] This fact is disputed by the parties. Mother contends that she received no formal notification of the meeting and, after learning of the interview by word of mouth, arrived late—after Officer Faraone read the account of alleged offenses. Officer Faraone maintains that Mother was present when he read the account and was thus informed of Nephew's admission to inappropriately touching F.D. Because the motion for summary judgment was filed by the defendants, DCS and EPD, we construe this fact in favor of the non-moving party, the plaintiffs, for purposes of this review. *See* Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001) ("All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party.").

ew's admission to the molestation of her daughter from a third party, and on August 8, 2008, this fact was confirmed by DCS.[2]

The plaintiffs filed suit alleging negligence. Specifically, the plaintiffs contend that DCS was negligent in failing to perform its statutory duty, pursuant to Indiana Code Section 31-33-18-4, to notify the plaintiffs of Nephew's alleged molestation of F.D. Additionally, plaintiffs argue that EPD was similarly negligent in failing to notify the plaintiffs and for not pursuing separate charges against Nephew for the molestation of F.D. On the defendants' motion, the trial court granted summary judgment in favor of all defendants,[3] concluding that DCS and EPD were each immune under both Indiana Code Section 31-33-6-1 (immunity from civil and criminal liability for reporting alleged child abuse) and Indiana Code Section 34-13-3-3 (immunity of a governmental entity or employee, a provision of the Indiana Tort Claims Act). Plaintiffs appealed the trial court's ruling as to DCS and EPD, and a divided panel of the Court of Appeals affirmed the trial court.[4] F.D. v. Ind. Dep't of Family Servs., 973 N.E.2d 1186 (Ind. Ct. App. 2012).[5] We granted transfer and now affirm the trial court's grant of summary judgment in favor of EPD, but reverse summary judgment with respect to DCS.

On appeal, the plaintiffs contend that the trial court erred in granting summary judgment in favor of DCS and EPD. Specifically, plaintiffs argue that because of the "role" and the "conduct" of DCS and EPD in the events surrounding the adjudication of Nephew, that the Indiana Tort Claims Act does not confer immunity in this case. Appellants' Br. at 8. The plaintiffs fur-

---

[2] Additional facts will be provided as necessary.

[3] The trial court also granted summary judgment in favor of the Vanderburgh County Prosecutor's Office, finding that there were no genuine issues of material fact. The plaintiffs did not appeal the trial court's ruling with respect to the Prosecutor's Office.

[4] The Court of Appeals, *sua sponte*, addressed the issue of whether Indiana Code Section 31-33-18-4 provides for a private right (or cause) of action against DCS. *See* F.D., 973 N.E.2d at 1191 (concluding that plaintiffs had no private right of action under Indiana Code Section 31-33-18-4); *see also id.* at 1193–94 (Crone, J., concurring in part and dissenting in part) (finding the existence of a private right of action); *id.* at 1198 (Bradford, J., concurring in part, dissenting in part, and concurring in result) ("I . . . agree with [the] conclusion that the plaintiffs do not have a private right of action . . . ."). Because this issue was not raised by either party, we need not address this issue.

[5] The plaintiffs incorrectly named the Indiana Department of Family Services (a.k.a. Indiana Family and Social Services Administration) and its Vanderburgh County office as parties to the suit. The proper party, Indiana Department of Child Services, was later substituted, but this change was never reflected in the case caption employed by the parties on appeal.

ther urge that the immunity granted by the child abuse reporting statute is inapplicable because "the claims against [DCS and EPD] do not arise out of [their] 'participation'" in the delinquency proceedings against Nephew. *Id.* at 16.

On appeal of the grant or denial of a motion for summary judgment, we apply the same standard applicable to the trial court. Presbytery of Ohio Valley, Inc. v. OPC, Inc., 973 N.E.2d 1099, 1110 (Ind. 2012) (citing Wilson v. Isaacs, 929 N.E.2d 200, 202 (Ind. 2010)). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012). If the moving party meets this burden, then the non-moving party must designate evidence demonstrating a genuine issue of material fact. *Id.* Review is limited to those facts designated to the trial court, Ind. Trial Rule 56(H), and summary judgment is appropriate where the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," *id.* 56(C). In applying the facts to the law, "[a]ll facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). "We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court." *Id.* at 974.

## 1. Applicability of the Indiana Tort Claims Act

More than forty years ago, a series of judicial decisions almost entirely abolished common law immunity for government entities and activities in this state. Campbell v. State, 259 Ind. 55, 63, 284 N.E.2d 733, 737–38 (1972) (abrogating immunity for the state); Klepinger v. Bd. of Comm'rs of Miami Cnty., 143 Ind. App. 178, 198–202, 239 N.E.2d 160, 172–73 (1968) (abrogating immunity for counties), *trans. denied*; Brinkman v. City of Indianapolis, 141 Ind. App. 662, 666–69, 231 N.E.2d 169, 172–73 (1967) (abrogating immunity for municipalities), *trans. denied.* Under Indiana common law, with very limited exception, governmental entities are thus subject to liability under traditional tort theories. *See* Benton v. City of Oakland City, 721 N.E.2d 224, 227 (Ind. 1999) (noting the three limited circumstances in which common law

sovereign immunity still exists: crime prevention, appointments to public office, and judicial decision-making). In apparent response to Campbell, Klepinger, and Brinkman, the Indiana General Assembly passed the Indiana Tort Claims Act ("ITCA"). Gary Cmty. Sch. Corp. v. Roach-Walker, 917 N.E.2d 1224, 1227 (Ind. 2009). "This statute granted absolute immunity to governmental entities in a number of specific circumstances, and codified rules of liability for other areas of governmental activity." *Id.* Whether immunity applies is a question of law for the court, and the party seeking immunity bears the burden of demonstrating that its conduct is within the protection afforded by the ITCA. Mangold ex rel. Mangold, 756 N.E.2d at 975. The negligence of a defendant "is not relevant if it is immune. Immunity assumes negligence but denies liability." Catt v. Bd.of Comm'rs of Knox Cnty., 779 N.E.2d 1, 5 (Ind. 2002). We explained:

> [T]he issues of duty, breach and causation are not before the court in deciding whether the government entity is immune. If the court finds the government is not immune, the case may yet be decided on the basis of failure of any element of negligence. This should not be confused with the threshold determination of immunity.

*Id.* at 6 (quoting Peavler v. Bd. of Comm'rs of Monroe Cnty., 528 N.E.2d 40, 46–47 (Ind. 1988)). This appeal involves only the issue of immunity, and thus we do not address any question regarding whether or not the plaintiffs have a valid cause of action against the defendants.

In interpreting statutes, such as the ITCA, we seek to give effect to the intent of the legislature. Clark v. Clark, 971 N.E.2d 58, 61 (Ind. 2012). We thus look first to the statutory language and "presume that the words of an enactment were selected and employed to express their common and ordinary meanings." Porter Dev., LLC v. First Nat'l Bank of Valparaiso, 866 N.E.2d 775, 778 (Ind. 2007). "Where the statute is unambiguous, the Court will read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings." *Id.* "Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity." Mangold ex rel. Mangold, 756 N.E.2d at 975.

The plaintiffs claim that DCS was negligent in failing to fulfill its statutory duty, pursuant to Indiana Code Section 31-33-18-4,[6] to notify the plaintiffs of Nephew's alleged molestation of

---

[6] The statutes in effect at the time provided: "The department shall initiate an immediate and appropriately thorough child protection investigation of every report of known or suspected child abuse or

5

their daughter, F.D.  In seeking summary judgment, DCS contends that it is immune under Indiana Code Section 34-13-3-3(6), "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . .  (6) The initiation of a judicial or an administrative proceeding."  Ind. Code § 34-13-3-3(6).[7]  The provision of the ITCA upon which DCS relies is most commonly associated with suits for malicious prosecution or abuse of process.  *See, e.g.*, Waldrip v. Waldrip, 976 N.E.2d 102, 115–16 (Ind. Ct. App. 2012) (malicious prosecution and abuse of process), *trans. not sought*; Butt v. McEvoy, 669 N.E.2d 1015, 1017–18 (Ind. Ct. App. 1996) (malicious prosecution), *trans. not sought*.  *But see* Ind. Dep't of Fin. Insts. v. Worthington Bancshares, Inc., 728 N.E.2d 899, 902–03 (Ind. Ct. App. 2000) (applying the provision in favor of a state entity that acted to place a bank into receivership), *trans. denied*.  In such cases, Indiana Code Section 34-13-3-3(6) protects state officials and employees from suits brought by those who were the subject of or experienced a loss from a civil or criminal adjudication.  The clearest example is a suit by a former criminal defendant against a prosecutor.  *See, e.g.*, Livingston v. Consol. City of Indianapolis, 398 N.E.2d 1302, 1306 (Ind. Ct. App. 1979) ("We hold, therefore, that in accordance with the plain wording of [Indiana Code Section 34-13-3-3(6)], immunity is granted to the State and municipal subdivisions and police officers in actions for malicious prosecution."), *trans. not sought*.

In the present case, DCS "investigated the initial reports of abuse and referred [the] findings to the EPD," whose investigation was "the catalyst for the judicial proceeding against"

---

neglect the department receives, whether in accordance with this article or otherwise."  Ind. Code § 31-33-8-1(a) (2007 Supp.).  And that,

> Whenever a child abuse or neglect investigation is conducted under this article, the department *shall give verbal and written notice to each parent*, guardian, or custodian of the child that:
>> (1) *the reports and information* described under section 1 of this chapter relating to the child abuse or neglect investigation; and
>> (2) if the child abuse or neglect allegations are pursued in juvenile court, the juvenile court's records described under IC 31-39;
> *are available upon the request of the parent*, guardian, or custodian except as prohibited by federal law.

*Id.* § 31-33-18-4(a) (emphasis added).

[7] At the trial court and the Court of Appeals, DCS also asserted immunity under subsections (7) and (8).  However, during oral argument before this Court, counsel conceded that DCS no longer sought immunity under these subsections.  Oral Arg. at 31:45, *available at* https://mycourts.in.gov/arguments/default.aspx?&id=1483&view=detail&yr=&when=&page=1&court.  We appreciate counsel's candor and agree with counsel's conclusion that subsections (7) and (8) of Indiana Code Section 34-13-3-3 are inapplicable to the facts of this case.

Nephew. Appellee DCS's Br. at 5–6. That investigation and referral, DCS contends, should bring it under the protection of the ITCA's provision for the "initiation of a judicial or administrative proceeding." Ind. Code § 34-13-3-3(6). Even if we accepted DCS's contention that there is a sufficient nexus between its investigation and referral to EPD and the initiation of the delinquency proceeding by the Vanderburgh County Prosecutor, a question which we do not decide today, DCS would not be immune under subsection (6). This is so for two reasons. First, plaintiffs' claims against DCS do not relate to the allegation that resulted in Nephew's delinquency adjudication—the molestation of Son. Rather, plaintiffs contend that DCS failed to notify parents of the information it received regarding the molestation of their daughter, F.D., information which was not used in the delinquency proceeding against Nephew. Second, Indiana Code Section 34-13-3-3(6) provides immunity where "a loss *results from*" "[t]he initiation of a judicial or an administrative proceeding." Ind. Code § 34-13-3-3(6) (emphasis added). Plaintiffs do not assert that any harm to them *resulted from* the initiation of the proceeding against Nephew. Rather, plaintiffs' claims against DCS regarding notification of the molestation of F.D. could be the same had, at the conclusion of EPD's investigation, the prosecutor not initiated a proceeding against Nephew. Finding the statute unambiguous, and thus reading the words of Indiana Code Section 34-13-3-3(6) in their plain, ordinary, and usual sense, we find that it does not provide DCS with immunity in this case.

With respect to EPD, the plaintiffs claim that EPD was negligent in failing to notify the plaintiffs of Nephew's admission to the molestation of F.D. We first note, separate from the question of immunity, that at the time of these events, EPD had no duty to disclose to plaintiffs the information regarding the molestation of F.D.[8] EPD's duty under the child abuse and neglect

---

[8] In 2011, after the events that led to plaintiffs filing suit, the Indiana General Assembly imposed a duty upon law enforcement agencies which provides:
> Except as provided in section 4 of this chapter, if a child is named in a written report of a crime as a victim of the crime or in a written report of a crime, and the law enforcement agency that receives the report reasonably believes that the child may be a victim of a crime, the law enforcement agency that receives the report shall make a reasonable attempt to:
> (1) notify the parent, guardian, or custodian of the child that the child has been named:
> (A) in the report as a victim of a crime; or
> (B) in the report and the law enforcement agency reasonably believes that the child may be a victim of a crime; and

statutes was to report the alleged abuse to DCS. *See* Ind. Code § 31-33-5-1 ("In addition to any other duty to report arising under this article, an individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report as required by this article."). The plaintiffs do not dispute that EPD disclosed the information regarding the molestation of F.D. to DCS. Any further duty imposed on EPD would relate to its capacity as a law enforcement agency, discussed below.

Plaintiffs further claim that EPD was negligent in not pursuing separate charges against Nephew for the molestation of F.D. EPD asserts immunity under subsection (8) of the ITCA which grants immunity where the loss results from "[t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." *Id.* § 34-13-3-3(8).[9] Commonly referred to as "law enforcement immunity," we have said that what is "required to establish immunity [is] that the activity be one in which government either compels obedience to laws, rules, or regulations or sanctions or attempts to sanction violations thereof." Davis v. Animal Control—City of Evansville, 948 N.E.2d 1161, 1164 (Ind. 2011). It is undisputed that EPD was investigating an alleged offense—the molestation of Son by Nephew. In fact, the allegations in plaintiffs' complaint pertain to deficiencies in EPD's investigation and pursuit of delinquency charges with respect to Nephew. We cannot see how plaintiffs' claim can be classified as anything other than an assertion that EPD was deficient in its "attempt[] to sanction [a] violation" of the law. *Id.* Subsection (8) plainly grants immunity from suit where the loss results from "failure to . . . enforce a law," Ind. Code § 34-13-3-3(8), and accordingly, EPD is immune under the ITCA.

In summary, we conclude that EPD's method of investigation is immune from liability under Indiana Code Section 34-13-3-3(8). Accordingly, summary judgment in favor of EPD is proper. However, because plaintiffs' claims against DCS do not result from the "initiation of a

---

(2) provide the parent, guardian, or custodian of the child with contact information, if available, for a victim rights advocate or a nonprofit, community, or government organization that assists victims.

Ind. Code § 5-2-18-3 (effective July 1, 2011).

[9] EPD also asserts that it is not a proper party to this suit and may not be sued because it has no corporate existence separate from the City of Evansville. Because we conclude that EPD is immune under the ITCA, regardless whether EPD is considered a separate entity or merely a functionary of the City of Evansville, we need not address this issue.

judicial or an administrative proceeding," DCS is not immune under Indiana Code Section 34-13-3-3(6) and summary judgment in favor of DCS is therefore improper as to this issue.

## 2. Applicability of Immunity Under the Child Abuse Reporting Statute

DCS contends that it is protected by the immunity provision of the child abuse reporting statute. Indiana Code Section 31-33-6-1 provides:

> Except as provided in section 2 of this chapter, a person, other than a person accused of child abuse or neglect, who:
>> (1) makes or causes to be made a report of a child who may be a victim of child abuse or neglect;
>> (2) is a health care provider and detains a child for purposes of causing photographs, x-rays, or a physical medical examination to be made under IC 31-33-10;
>> (3) makes any other report of a child who may be a victim of child abuse and neglect; or
>> (4) participates in any judicial proceeding or other proceeding:
>>> (A) resulting from a report that a child may be a victim of child abuse or neglect; or
>>> (B) relating to the subject matter of the report;
> is immune from any civil or criminal liability that might otherwise be imposed because of such actions.

*Id.* § 31-33-6-1.[10] DCS asserts that it is immune under subsection (4) of the statute "for allegations that arise out of its participation in any proceeding resulting from the report of child abuse," including those alleged here. Appellee DCS's Br. at 11–12. We disagree.

Indiana Code Section 31-33-6-1 unambiguously provides immunity from any civil liability "that might otherwise be imposed *because of such actions*." *Id.* (emphasis added). As the Court of Appeals has observed,

> [O]ur state legislature has expressed the following purposes for the child abuse reporting statute: to encourage effective reporting of suspected child abuse or neglect; to provide prompt investigation of reports of child abuse or neglect; and to provide protection for an abused or neglected child from further abuse or neglect. *See* Ind. Code § 31-33-1-1. In order to achieve these goals, as we have already discussed, the legislature requires individuals to immediately report suspected abuse to the authorities and has provided immunity for reporters of child abuse, absent bad faith. *See* Ind. Code §§ 31-33-5-1, -2 and -4,

---

[10] Section 2, the exception referenced in the immunity statute, states: "Immunity does not attach for a person who has acted maliciously or in bad faith." Ind. Code § 31-33-6-2. Plaintiffs do not assert that DCS acted maliciously or in bad faith.

and §§ 31-33-6-1**,** -2 and -3. The legislature's stated goals are better met when individuals attempting to comply with the reporting statute can do so without the fear of civil liability. To decide otherwise, would have a chilling effect on the reporting of child abuse.

Anonymous Hosp. v. A.K., 920 N.E.2d 704, 709 (Ind. Ct. App. 2010), *trans. not sought*. We agree. Here, however, DCS seeks to extend that immunity to its inaction on a separate report of abuse "because it learned of the information that it allegedly failed to reveal to [the plaintiffs] through its participation in the investigation" of the original child abuse report. Appellee DCS's Br. at 12. Again, assuming without deciding that DCS did "participate" in the delinquency proceeding, its contention fails as a matter of law. Indiana Code Section 31-33-6-1 provides immunity from liability "that might otherwise be imposed *because of*" participation in a judicial proceeding resulting from or relating to a report of child abuse (emphasis added). However, the plaintiffs do not allege that DCS's actions in the juvenile proceedings against Nephew caused them harm. Rather, plaintiffs' suit is founded upon DCS's statutorily delineated duty to "initiate an immediate and appropriately thorough child protection investigation of every report," Ind. Code § 31-33-8-1(a) (2007 Supp.), and to "give verbal and written notice to each parent, guardian, or custodian of the child that: (1) the reports and information . . . relating to the child abuse or neglect investigation . . . are available upon the request of the parent . . . ." *Id.* § 31-33-18-4(a). Thus, plaintiffs contend that DCS's *inaction* with respect to the *separate report* of abuse to Daughter hindered their ability to obtain proper treatment. The facts, which we must construe in favor of the plaintiffs as the non-moving party on summary judgment, do not fall within the circumstances granting immunity under the plain words of the statute—a statute which is in derogation of the common law and must be narrowly construed against immunity. Accordingly, summary judgment is not proper as to this issue.

## Conclusion

We affirm the grant of summary judgment in favor of the Evansville Police Department, finding that it is immune from the plaintiffs' claims under the Indiana Tort Claims Act. However, we reverse summary judgment with respect to the Department of Child Services, concluding that it is not immune under either the Indiana Tort Claims Act or the child abuse reporting statute. This case is remanded to the trial court for further proceedings.

10

Rucker and David, JJ., concur. Rush, J., concurs in part and dissents in part with separate opinion in which Massa, J., concurs.

**Rush, J. concurring in part and dissenting in part.**

I respectfully dissent from the issue the majority decides—whether DCS is immune—as well as one that it doesn't—whether plaintiffs may hold DCS civilly liable. First, I disagree about the threshold immunity issue. I would conclude DCS is immune because plaintiffs' claim arises from DCS's participation in the initiation of a judicial proceeding. Second, the majority, without providing any guidance, leaves it to the trial court to determine whether plaintiffs have a valid claim—an issue that divided the Court of Appeals panel. In the absence of immunity, Indiana law requires us to analyze whether the Legislature intended the violation of the Notice Statute to give rise to a negligence action. Applying that analysis, I can find no such legislative intent here. I do not condone DCS's egregious conduct of allegedly not notifying parents of their child's abuse, but not every breach of a statutory duty provides plaintiffs with a negligence action.

### Statutory Immunity

DCS argues that statutory immunity bars plaintiffs' claim. Indiana Code section 34-13-3-3(6) (ITCA) grants immunity to governmental entities for losses resulting from "[t]he initiation of a judicial . . . proceeding." I agree with the majority that we must address statutory immunity first because finding DCS immune "bars [plaintiffs'] recovery even where ordinary tort principles would impose liability." Gary Comm. Sch. Corp. v. Roach-Walker, 917 N.E.2d 1224, 1225 (Ind. 2009). The majority concludes that DCS is not immune because "plaintiffs' claims against DCS do not relate to the allegation that resulted in Nephew's delinquency adjudication," and because plaintiffs' loss did not arise from the initiation of the proceeding. But that view construes the ITCA's protections more narrowly than Indiana law requires.

Immunity for the "initiation of a judicial proceeding" protects not just the prosecutor filing charges, but also the participants in the chain of events that leads to the prosecution. For example, in Hedges v. Rawley, the assistant superintendent of a municipal wastewater plant accused two employees of stealing gasoline. 419 N.E.2d 224, 225–26 (Ind. Ct. App. 1981). The police investigated the accusations, and the State prosecuted the employees. Id. at 226. The court concluded the ITCA granted the assistant superintendent immunity because he participated in the initiation of a judicial proceeding—noting that the "Legislature utilized broad language" in that

provision, when it "certainly could have adopted a statute which limited the immunity." Id. at 227–28.

DCS's actions similarly fall within the "broad language" of this immunity provision. See id. DCS has a statutory duty to investigate child abuse reports, I.C. § 31-33-8-1(a) (Supp. 2005), make written findings available to law enforcement, I.C. § 31-33-7-5 (Supp. 2005), and "assist the juvenile court . . . during all stages of the proceedings," I.C. § 31-33-14-2 (Supp. 2005). Here, DCS investigated Mother's report of abuse and sent its findings to EPD. These actions resulted in the initiation of a judicial proceeding against Nephew—and DCS's alleged negligent act, the failure to notify, resulted from its participation in this process. See Estate of Mintz v. Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 999–1000 (Ind. 2009) (finding that the failure to act is nonetheless a negligent act). So, I would conclude, as Judge Vaidik did, that "[w]hile it was the Prosecutor's Office that finally filed the paperwork that initiated the legal proceedings against Juvenile, all agencies in the chain worked together" to initiate the proceedings. F.D., 973 N.E.2d at 1192.

The majority concludes DCS is not immune because plaintiffs' claims relate to "information which was not used in the delinquency proceeding against Nephew," and because plaintiffs "do not assert that any harm to them *resulted from* the initiation of proceedings against Nephew." But the ITCA's protections are not so limited. It provides immunity from damages even when they do not directly relate to an eventual prosecution. See Hupp v. Hill, 576 N.E.2d 1320, 1322, 1325 (Ind. Ct. App. 1991). In Hupp, a homeowner incurred damages because of the execution of an invalid search warrant, but the search did not result in a prosecution. Id. at 1323. Despite the homeowners' damages not relating to any prosecution, the prosecutor was immune because the damages resulted from "the initiation of a judicial proceeding." See id. at 1325. Similarly, plaintiffs' damages resulted from actions DCS took during the initiation of the judicial proceeding against Nephew. Therefore, DCS should be immune for its alleged negligent act—whether or not plaintiffs' claims directly relate to Nephew's eventual prosecution.

**Private Right of Action**

After determining that DCS lacks immunity, the majority fails to analyze whether plaintiffs have a private right of action—the very issue plaintiffs presented on transfer. As the

2

majority recognizes, the immunity determination is only a "threshold determination"—a starting point—and the "absence of immunity does not necessarily result in a legally cognizable claim of negligence." Mullin v. Mun. City of S. Bend, 639 N.E.2d 278, 283 (Ind. 1994), limited on other grounds by Benton v. City of Oakland City, 721 N.E.2d 224, 231 (Ind. 1999). After determining that a defendant lacks immunity, we must next determine whether the defendant breached a duty that gives rise to a negligence claim. Cf. King v. Ne. Sec., Inc., 790 N.E.2d 474, 484 (Ind. 2003); Mullin, 639 N.E.2d at 283. The majority leaves this issue, which already divided the Court of Appeals panel, F.D., 973 N.E.2d at 1192–94 (Crone, J., concurring in part and dissenting in part), to the trial court, without providing any guidance. Because this question of law is squarely before this Court,[11] I believe we should address it to conserve judicial resources and to aid the trial court.

Plaintiffs allege that DCS negligently violated Indiana Code section 31-33-18-4 (Notice Statute), which requires DCS to notify parents that a child abuse report involving their child is available. The statute does not expressly provide for a private right of action, but plaintiffs argue it implies one. The majority of the Court of Appeals concluded that the statute did not grant plaintiffs a private right of action. And I agree based on the statute's language and its purpose.

"When a civil tort action is premised upon violation of a duty imposed by statute, the initial question to be determined by the court is whether the statute in question confers a private right of action," Borne ex rel. Borne v. Nw. Allen Cnty. Sch. Corp., 532 N.E.2d 1196, 1203 (Ind. Ct. App. 1989), trans. denied. To prevail on their negligence claim, plaintiffs need to show that DCS (1) owed them a duty, (2) breached that duty, and (3) the breach proximately caused their damages. Putnam Cnty. Sheriff v. Price, 954 N.E.2d 451, 453 (Ind. 2011). Plaintiffs do not allege DCS breached a common law duty, such as the duty to use reasonable care. See Benton, 721 N.E.2d at 228. Rather, they allege DCS breached a statutory duty to notify a parent of the availability of a child abuse report—a duty not recognized at common law. Cf. J.A.W. v. Roberts, 627 N.E.2d 802, 813 (Ind. Ct. App. 1994) (finding that there was no common law duty

---

[11] While not extensively briefed at the trial court or Court of Appeals, I find this issue before this Court. At the trial court level, DCS and plaintiffs disputed whether plaintiffs were asserting a recognizable tort claim. On appeal, plaintiffs acknowledged that Indiana courts had concluded that similar statutory violations did not grant plaintiffs private rights of action, but they sought to distinguish this precedent. And before this Court, both sides fully briefed and argued the issue.

to report child abuse, and that the "[L]egislature has declined to codify a civil cause of action against an adult who knowingly fails to report alleged child abuse") (Rucker, J.), abrogated on other grounds by Holt v. Quality Motor Sales, Inc., 776 N.E.2d 361 (Ind. Ct. App. 2002), trans. denied. Because plaintiffs allege DCS breached a statutory duty, we must determine whether the Legislature intended the Notice Statute to confer a private right of action, Borne, 532 N.E.2d at 1203.

To answer this question, we must look to the language of the statute and the Legislature's intent. "The determination of whether a civil cause of action exists begins with an examination of legislative intent." Roberts v. Sankey, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004), trans. denied. "[A] private cause of action generally will be inferred where a statute imposes a duty for a particular individual's benefit but will not be where the Legislature imposes a duty for the public's benefit." Blanck v. Ind. Dep't of Corr., 829 N.E.2d 505, 509 (Ind. 2005) (citing Americanos v. State, 728 N.E.2d 895 (Ind. Ct. App. 2000), trans. denied). But even where a duty benefits an individual, we will not infer a private right of action unless that appears to be the Legislature's intent. See id. at 509–10. And Indiana courts have rarely concluded the Legislature intended to confer a private right of action. See, e.g., id.; Borne, 532 N.E.2d at 1203.

Further, no matter whether plaintiffs predicate their claim upon a negligence theory or a freestanding private right of action, a court must still determine the larger question of whether the Legislature intended to hold the defendant civilly liable. [12] C.T. v. Gammon, 928 N.E.2d 847, 852–53 (Ind. Ct. App. 2010) (finding that when a plaintiff alleges the defendant negligently breached a statute, the question is whether the statute conferred a private right of action). In Borne, parents alleged a school principal breached a statutory duty to report child abuse. 532 N.E.2d at 1202–03. The court concluded that "the [L]egislature did not intend to confer a private right of action" in tort for failure to report because "such an action is not authorized at common

---

[12] This holds true even under the doctrine of negligence *per se*. In a negligence *per se* action, the statute supplies a defendant's standard of care—the second element in a tort claim. See Cook v. Whitsell-Sherman, 796 N.E.2d 271, 275 (Ind. 2003). The negligence *per se* defendant already owes "a duty to use reasonable care," 1 Dan B. Dobbs et al., The Law of Torts §148 (2d ed. 2011), "without reliance on the statute," Restatement (Third) of Torts § 38 cmt. d (2012). When a plaintiff alleges a statute supplies a defendant's duty—the first element in a tort claim—a court must inquire whether the Legislature intended to make the defendant liable in tort because if every breach of a statute constitutes negligence *per se*, then "every statute in effect would create an implied right of action—which clearly is not the law." Cuyler v. United States, 362 F.3d 949, 952 (7th Cir. 2004).

4

law," and recognizing one would "misdirect judicial time and attention from the very real problems of children in need of services." Id. at 1203.

In this case, the Court of Appeals majority determined that the Notice Statute did not expressly provide an implied private right of action. F.D., 973 N.E.2d at 1190, 1198 (Vaidik, J. & Bradford, J. concurring in part). It found that the purpose of Article 33 ("Juvenile Law: Reporting and Investigation of Child Abuse and Neglect") was "to create a more effective, efficient, and accessible system to deal with the issue of child abuse and neglect for the public's benefit as a whole, not just for a particular individual's benefit." Id. I agree with this conclusion.

Moreover, "our [L]egislature has not [expressly] afforded a private right of action" for breach of the Notice Statute, F.D., 973 N.E.2d at 1191, while it has done so in other contexts. See, e.g., I.C. § 24-5-15-9 (2007) (expressly providing that a person damaged by a credit services organization may bring an action). Perhaps because the Legislature expressly creates private rights of action, Indiana courts have long been reluctant to infer them. See, e.g., Howard Reg'l Health Sys. v. Gordon, 952 N.E.2d 182, 188 (Ind. 2011) ("conclud[ing] that neither the rules of statutory construction nor the history of the enactment lead to the idea that [the statute] confers a private remedy"); Right Reason Publ'ns v. Silva, 691 N.E.2d 1347, 1351–52 (Ind. Ct. App. 1998) (finding that I.C. § 35-46-2-1 did not include an implied right of action); Walling v. Appel Serv. Co., Inc., 641 N.E.2d 647, 652–53 (Ind. Ct. App. 1994) (finding no private right of action under I.C. § 13-7-4-1). Without some indication that the Legislature intended to imply a private right of action, I would not infer one.

## Conclusion

I respectfully dissent from my colleagues because I conclude DCS is immune from liability, and even if it weren't, the Notice Statute would not provide plaintiffs with a private right of action. While I do not condone DCS's conduct, I would affirm the trial court's grant of summary judgment for all defendants.

Massa, J., concurs.

5