

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 25S-PL-141

## Indiana Land Trust #3082 and Omar and Haitham Abuzir as Trustees
*Appellants (plaintiffs below)*



FILED

Feb 24 2026, 11:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

—v—

## Hammond Redevelopment Commission et al.
*Appellees (defendants below)*

---

Argued: September 4, 2025 | Decided: February 24, 2026

Appeal from the Lake Superior Court,
No. 45D11-2401-PL-1
The Honorable Bruce D. Parent, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 24A-PL-1284

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

The Indiana Tort Claims Act, or ITCA, governs lawsuits against political subdivisions and their employees. Relevant here are two provisions of the ITCA: code subsection 34-13-3-3(a)(6), which immunizes government entities and their employees if an alleged "loss results from" the "initiation of a judicial . . . proceeding"; and code section 34-13-3-5, which generally bars an action against an employee unless the alleged tortious conduct falls "clearly outside the scope of the employee's employment." Because the plaintiffs' abuse-of-process claim directly "result[ed] from" the defendants' "initiation of" a condemnation action, and because the defendants' conduct in approving the condemnation action clearly fell within the scope of their employment, we hold as a matter of law that immunity applies. Accordingly, we affirm the trial court's ruling on the defendants' 12(B)(6) motion to dismiss.

# Facts and Procedural History

Omar and Haitham Abuzir are beneficiaries of Indiana Land Trust #3082 (collectively, the Landowners). The trust owns property at 1318–1320 Indianapolis Boulevard (the Property) in the City of Hammond on which Omar and Haitham operate a fireworks and tobacco retail business. In January 2018, the Hammond Redevelopment Commission (or HRC) offered to buy the Property for $394,500, purportedly to develop a public street connecting residents of a local neighborhood to an adjacent road. Landowners declined the offer, so the HRC, in June 2019, filed a complaint in the Lake Circuit Court seeking to condemn the Property (the Condemnation Action). Landowners responded by alleging that the HRC's attempted taking was arbitrary and capricious, made in bad faith, and based on "subterfuge" and "improper motives"; and pursued not for a public purpose but, rather, for the "private benefit of the Mayor, his campaigns," and the Landowner's business competitors. App. Vol. 2, p. 23. The Condemnation Action remains pending.

Two years later, Landowners filed a counterclaim and complaint against the HRC and its individual members,[1] the City of Hammond, and Mayor Thomas McDermott, Jr. (collectively, the Defendants) in a separate case, raising similar arguments and alleging abuse of process and various constitutional-rights violations. The Defendants removed that case to federal court.

Then, in the Condemnation Action, Landowners sought permission to "intervene as Plaintiffs" and to file a counterclaim for abuse of process. App. Vol. 3, p. 4; Motion for Leave at 1, 3. The trial court denied that request, ruling that code subsection 32-24-1-8(c) prohibits counterclaims in condemnation proceedings. Citing the "case pending in federal court addressing the same issues," the court explained that the Landowners would "not be prejudiced" by its ruling. App. Vol. 3, p. 7. Ultimately, though, the federal court dismissed the Landowners' constitutional claims, and it declined to exercise supplemental jurisdiction over their abuse-of-process claim, which the court dismissed without prejudice so Landowners could refile that claim in state court.

Landowners then filed another complaint in the Lake Superior Court (the Underlying Cause), alleging, among other things, abuse of process by the Defendants, arguing that Defendants lacked immunity, and seeking damages (compensatory and punitive) and attorneys' fees. Defendants moved to dismiss under Trial Rule 12(B)(6), arguing (1) that the abuse-of-process claim was an impermissible collateral attack on the pending Condemnation Action; (2) that Landowners' claims were objections and defenses that must be addressed in the Condemnation Action; (3) that the HRC used the proper statutory vehicle for bringing its Condemnation Action, so Landowners' claim necessarily fails; and (4) that all Defendants enjoyed immunity under the ITCA. App. Vol. 2, pp. 162–63, 165, 167, 178, 182; App. Vol. 3, p. 42.

---

[1] The complaint named the following individual members: Tony Hauprich, Greg Myricks, Dawn Tomich, Wally Kasprzycki, Miriam Soto-Pressley, and Anna Mamala.

The trial court granted Defendants' motion. While acknowledging that a defendant in a condemnation action may assert fraud or bad faith "to show that the property taken will not be used for public purpose" or that the proceedings are a "subterfuge to convey the property to a private use," the trial court concluded that the merits of Landowner's abuse-of-process claim would "be properly heard" in the pending Condemnation Action. App. Vol. 3, pp. 61–62. To maintain the Underlying Cause, the court reasoned, "would run the risk of subjecting the parties to different orders on the same issues from two different [trial courts]." *Id.* at 62.

In a unanimous precedential opinion, the Court of Appeals reversed, holding (1) that a landowner subject to a condemnation action *can* raise a parallel abuse-of-process claim because the former proceeding limits the full scope of damages otherwise available in the abuse-of-process tort action; (2) that 12(B)(6) dismissal was improper because Landowners raised a question and sufficiently alleged a claim "that is a proper subject for judicial review"; and (3) that, given Landowner's allegations that the Defendants acted "outside the scope of their employment," it's disputable whether the ITCA immunizes them and, thus, 12(B)(6) dismissal was improper. *Ind. Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 252 N.E.3d 931, 940–41, 944, 945 (Ind. Ct. App. 2025).

We granted the Defendants' petition for transfer, thus vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standard of Review

On appeal from a trial court's ruling on a 12(B)(6) motion, this Court applies a de novo standard of review and examines the pleadings in a light "most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor." *Charter One Mortg. Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind. 2007). "A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief" under any circumstances. *Id.* at 605. Whether a government unit or its employee is entitled to immunity under the ITCA

is a question of law likewise subject to de novo review. *Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001).

# Discussion and Decision

The dispute here centers on two principal issues: (1) whether a landowner subject to a condemnation action can raise a parallel abuse-of-process claim against the government for wrongfully bringing the condemnation action; and (2) whether, as a matter of law, Defendants are immune for their actions under the ITCA. Because we find the latter issue dispositive, we decline to address the former.

\* \* \* \*

Defendants and aligned amici argue that immunity applies under two provisions of the ITCA: code section 34-13-3-5 and code subsection 34-13-3-3(a)(6). We address each of these provisions in turn.

## A.  Immunity Under Code Section 34-13-3-5

The ITCA establishes "certain parameters to determine liability for negligent acts or omissions on the part of government employees" and grants "substantial immunity" for conduct that falls "within the scope of the employee's employment." *Burton v. Benner*, 140 N.E.3d 848, 852 (Ind. 2020) (quoting *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003)). To sue a government employee personally, the plaintiff must allege that the employee's acts or omissions causing the loss are "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c).[2]

---

[2] For purposes of code chapter 34-13-3, the terms "employee" and "public employee" refer to "a person presently or formerly acting on behalf of a governmental entity," which includes "members of boards, committees, commissions, authorities, and other instrumentalities," as well as "elected public officials." Ind. Code § 34-6-2.1-54(a).

Landowners argue that the "inapplicability of [ITCA] immunity" to the mayor and the individual HRC members "is plainly evident," given the "allegations of acts beyond the scope of employment." Resp. to Pet. to Trans. at 15. To conclude otherwise, Landowners insist, would "grossly expand [ITCA] immunity to include any acts proclaimed by municipal employees themselves to be within the scope of their own employment." *Id.* at 14.

We disagree.

An allegation that an individual defendant acted outside the scope of employment necessarily fails when that conduct is "of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (internal citation and quotation marks omitted). "Even tortious acts may fall within the scope of employment," so long as the purpose of the employee's conduct "was, to an appreciable extent, to further his employer's business." *Id.* (internal citation and quotation marks omitted).

In *Celebration Fireworks*, for example, this Court held that critical comments made by a city fire chief about the plaintiff's bill-paying history while inspecting the business premises of the plaintiff's prospective landlord amounted to acts falling within the scope of his employment, thus immunizing him from a defamation claim. *Id.* at 451, 454. The fire chief, we reasoned, was "on public time" when he made the comments, "performing a function that was central to the position he held." *Id.* at 453. In another case, *Ball v. Jones*, the Court of Appeals held that a detective's alleged falsification of a probable-cause affidavit was, "to an appreciable extent to further his employer's business." 52 N.E.3d 813, 820–21 (Ind. Ct. App. 2016) (internal citation and quotation marks omitted). Thus, absent evidence that he "acted on his own initiative or with no intention to perform the service for which he was employed," the detective's actions fell within the scope of his employment. *Id.* at 820. *Cf. VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048, 1050 (Ind. Ct. App. 1992) (holding that the ITCA did not bar a student's suit against a professor for negligent maintenance of his home because such maintenance fell beyond the scope of his employment with the public university).

Here, Landowners alleged that the mayor and individual HRC members (1) either voted for or failed to stop the adoption of the resolution approving the condemnation action, (2) failed to "conduct due diligence" to ensure the condemnation action had a proper factual and legal basis, (3) failed to ensure the condemnation action was for a public purpose before voting for it, and/or (4) knew about the political/improper purpose for the condemnation action. App. Vol. 2, pp. 37–39. Although the scope-of-employment question is ordinarily reserved for the factfinder, a court may resolve the issue as a matter of law when the undisputed facts "would not allow a jury to find that the tortious acts were within the scope of employment." *Burton*, 140 N.E.3d at 852 (internal citation and quotation marks omitted). And here, the conduct of the mayor and HRC members, as alleged by the Landowners, clearly reflects "the same general nature as that authorized, or incidental to the conduct authorized" by statute. *See* I.C. §§ 32-24-1-1 through -17 (setting forth general procedures for the exercise of eminent domain); I.C. § 36-7-14-20 (specifying a local redevelopment commission's eminent-domain powers); I.C. § 36-7-14-16(b) (requiring approval of the commission's resolution and plan by the county executive). And the conduct of these individuals, regardless of their intentions, "was, to an appreciable extent," in furtherance of their "employer's business." *See Celebration Fireworks*, 727 N.E.2d at 453 (internal citation and quotation marks omitted).[3]

For these reasons, we hold that, as a matter of law, the mayor and the individual HRC members are immune from liability under code section 34-13-3-5. To hold otherwise would undermine the purpose of immunity—that is, "to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat

___

[3] To be sure, there may be cases when an employee loses immunity by acting "so far out of the scope of his or her employment as to amount to fraud or criminal conduct." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000) (internal citation and quotation marks omitted). But the Landowners' complaint alleged neither fraud nor criminal conduct, and we decline to characterize the mayor's or HRC members' conduct as so "outrageous as to be incompatible with the performance of the duty undertaken." *See id.* at 452–53 (internal citation and quotation marks omitted).

of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks*, 727 N.E.2d at 452 (internal citation and quotation marks omitted).

## B. Immunity Under Code Subsection 34-13-3-3(a)(6)

In their complaint, Landowners pled in the alternative that the Defendants—collectively—acted "under color of law" and that the mayor and the HRC members—individually—acted "*within* the scope of their employment." App. Vol. 2, p. 19 (emphasis added).

As for the mayor and individual HRC members, we first observe that a "plaintiff cannot sue a governmental employee personally" when, like here, "the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment." *City of Gary v. Conat*, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004) (citing *Bushong*, 790 N.E.2d at 471). Even if Landowners didn't plead themselves out of court by raising these alternative allegations,[4] immunity still applies to the mayor and individual HRC members—indeed to *all* Defendants—under code subsection 34-13-3-3(a)(6) (or just subsection (6)).

The ITCA immunizes a government entity, "or an employee acting within the scope" of his or her employment, "if a loss results from" the "initiation of a judicial … proceeding," I.C. § 34-13-3-3(a)(6), *i.e.,* the initiation of "any proceeding for the purpose of obtaining such remedy as the law allows," *Livingston v. Consol. City of Indianapolis*, 398 N.E.2d 1302, 1304 (Ind. Ct. App. 1979) (internal citation and quotation marks omitted). Immunity under subsection (6) is "most commonly associated with suits for malicious prosecution or abuse of process." *F.D. v. Ind. Dep't. of Child Servs.*, 1 N.E.3d 131, 137 (Ind. 2013).

---

[4] Our trial rules permit a litigant to set forth in a pleading "two [2] or more statements of a claim or defense alternatively or hypothetically, either in one [1] count or defense or in separate counts or defenses." Ind. Trial Rule 8(E)(2). If one of these statements would suffice on its own, "the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." *Id.*

In *F.D.*, the plaintiff-parents informed DCS that their son had been molested by their nephew, prompting DCS to investigate and refer the matter to police, which in turn led the nephew to admit having molested the parents' daughter as well. *Id.* at 134. Police then referred the matter to the juvenile court for possible delinquency proceedings, but neither police nor DCS informed the parents of the nephew's admissions. *Id.* After independently learning of those admissions, the parents sued DCS, alleging that the agency was negligent by failing to fulfill its statutory duty to notify them. *Id.* DCS sought immunity under subsection (6), arguing that its investigation and referral was "the catalyst for the judicial proceeding against" the nephew. *Id.* at 137. This Court rejected that argument (1) because the parents' claim related not to an allegation that resulted in the nephew's delinquency adjudication but, rather, to DCS's failure to notify them of the molestation; and (2) because, rather than asserting that any harm resulted from the initiation of judicial proceedings against the nephew, the parents' failure-to-notify claims against DCS would have been the same had the prosecutor never initiated those proceedings. *Id.* at 137–38.

Unlike in *F.D.*, the Landowners' abuse-of-process claim directly "result[ed] from" the Defendants' "initiation of a judicial proceeding." Indeed, in their complaint, the Landowners alleged that the Defendants committed abuse of process by "[p]ursuing a taking" based on "false rationales" and "misleading acts" for a private purpose rather than for public interests. App. Vol. 2, p. 40. And the Defendants, whatever their motive, initiated this judicial proceeding "for the purpose of obtaining such remedy as the law allows," *see Livingston*, 398 N.E.2d at 1304 (internal citation and quotation marks omitted), *i.e.*, for the purpose of condemnation, *see* I.C. § 32-24-1-4.

Landowners offer no compelling argument for rejecting application of subsection (6) immunity. Subsection (6), they insist, immunizes *only* the "initiation" of judicial proceedings, "not their *continuation* after discovery reveals their false bases." Resp. to Pet. to Trans. at 17–18 (emphasis added); *see also* Appellant's Reply Br. at 9–10, 18 (raising the same argument). But the simple act of filing a complaint (whether to condemn property or pursue other claims) results in no "loss" to the defendant; it's

the initiation and prosecution of the government's claim to its final resolution that does. Accepting Landowners' argument would effectively dismantle subsection (6) immunity. What's more, neither case on which Landowners rely support their interpretation of subsection (6). *See Ind. Dep't of Fin. Insts. v. Worthington Bancshares, Inc.*, 728 N.E.2d 899, 902 (Ind. Ct. App. 2000) (stressing that the provision ensures government actors are "free from fear of liability for the initiation of [judicial] proceedings" but otherwise making no distinction between the initiation of an action and the continuation of an action), *trans. denied*; *Clifford v. Marion Cnty. Prosecuting Att'y*, 654 N.E.2d 805, 808 (Ind. Ct. App. 1995) (same).

For these reasons, we hold that, as a matter of law, *all* Defendants—the HRC, the City, the mayor, and the individual HRC members—are immune from liability under code subsection 34-13-3-3(a)(6).

# Conclusion

For the reasons above, we affirm the trial court's ruling on Defendants' 12(B)(6) motion to dismiss.

Rush, C.J., and Massa, Slaughter, and Molter, J.J., concur.

ATTORNEYS FOR APPELLANTS
Greg A. Bouwer
Jeffrey R. Carroll
Karol A. Schwartz
Koransky, Bouwer & Poracky, P.C.
Dyer, Indiana

ATTORNEYS FOR APPELLEES CITY OF HAMMOND AND THOMAS MCDERMOTT, JR.
Robert J. Feldt
Erika N. Helding
David C. Jensen

Eichhorn & Eichhorn, LLP
Hammond, Indiana

Kevin C. Smith
Munster, Indiana

ATTORNEYS FOR APPELLEES HAMMOND REDEVELOPMENT
COMMISSION, TONY HAUPRICH, GREG MYRICKS, DAWN
TOMICH, WALLY KASPRZYCKI, MIRIAM SOTO-PRESSLEY, AND
ANNA MAMALA
David W. Westland
Westland & Bennett, P.C.
Hammond, Indiana

ATTORNEYS FOR AMICUS CURIAE ATTORNEY GENERAL OF
INDIANA
Theodore E. Rokita
Attorney General of Indiana

Benjamin M. Jones
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE DEFENSE TRIAL COUNSEL OF
INDIANA
Lucy R. Dollens
Michalynn M. Miller
Quarles & Brady LLP
Indianapolis, Indiana